979 P.2d 374 (1999)
138 Wash.2d 161
KING COUNTY, Respondent,
v.
CENTRAL PUGET SOUND GROWTH MANAGEMENT HEARINGS BOARD, an agency of the State of Washington; Vashon-Maury Island Community Council; Citizens for Rural Oriented Government; Duwamish Valley Neighborhood Preservation Coalition; Paul P. Carkeek; Maxine Keesling; Tolt Community Club; Mary O'Farrell, Respondents,
Friends of the Law, Petitioner, and
Bear Creek Citizens for Growth Management; Port Blakely Tree Farms; Quadrant Corporation; City of Snoqualmie; King County School Coalition; Union Hill Water Association; Preston Industrial Associates; K-2 Corporation; and Washington State School Directors' Association, Respondents.
Friends of the Law, a Washington non-profit corporation; and Coalition for Public Trust, a Washington non-profit corporation, Petitioners,
v.
King County; Port Blakely Tree Farms; Lake of the Woods Homeowners Association; and Bear Creek Citizens for Growth Management, Respondents.
Friends of the Law, a Washington non-profit corporation; and Coalition for Public Trust, a Washington non-profit corporation, Petitioners,
v.
King County; Port Blakely Tree Farms, a Washington limited partnership; Quadrant Corporation; Central Puget Sound Growth Management Hearings Board, an agency of the State of Washington; Vashon-Maury Island Community Council; Citizens for Rural Oriented Government; Duwamish Valley Neighborhood Preservation Coalition; Paul P. Carkeek; Maxine Keesling; Tolt Community Club; Mary O'Farrell; Bear Creek Citizens for Growth Management; City of Snoqualmie; King County School Coalition; Union Hill Water Association; Preston Industrial Associates; K-2 Corporation; and Washington State School Directors' Association, Respondents.
No. 66904-0.
Supreme Court of Washington, En Banc.
Argued January 14, 1999.
Decided June 10, 1999.
*376 Bricklin & Gendler, Michael Gendler, David Bricklin, Seattle, for Petitioner
Law Offices of J. Richard Aramburu, Jeffrey Eustis, Norm Maleng, King County Prosecutor, H. Kevin Wright, Deputy, Michael *377 Sinsky, Deputy, Eric Laschever, Davis, Wright & Tremaine, Thomas A. Goeltz, Hall Baetz, Hillis, Clark & Martin, Richard Wilson, Kristina Dalman, George Kresovich, Brian Todd, Charles Maduell, Alan Wallace, Seattle, for Respondents
*375 DURHAM, J.
Friends of the Law and the Coalition for Public Trust challenge a Court of Appeals decision affirming the validity of the King County Growth Management Plan's designation of 2,500 acres of undeveloped land between Redmond and Duvall as an Urban Growth Area. Friends also objects to King County's issuance of project permits for the area. We affirm the Court of Appeals' denial of Friends' permit challenges. However, we reverse the Court's approval of the Bear Creek Urban Growth Area designation and remand the matter to the Central Puget Sound Growth Management Hearings Board for a determination of whether the Urban Growth Area designation complies with the Growth Management Act.

FACTS
These consolidated cases arise out of King County's (the County) designation of the Bear Creek area as urban in its Growth Management Plan, and the County's subsequent approval of project permits for the Bear Creek Urban Planned Development sites. Bear Creek is an undeveloped area between Redmond and Duvall that straddles a wooded plateau above the Snoqualmie Valley. Petitioners are Friends of the Law and the Coalition for Public Trust (Friends), two citizens' groups who oppose the Bear Creek project. Respondents are King County and the Quadrant Corporation, the owner of the Bear Creek site.[1]
The issues presented to this court stem from the County's approval of the Bear Creek Development. However, each of the three consolidated cases has a unique procedural history. In order to understand the legal questions presented by each of the three cases, we will first discuss the urban growth designation of the area in general. We will then separately explain the foundation of each lawsuit.
The Bear Creek Urban Growth Area Designation
The Legislature adopted the Growth Management Act (GMA) to control urban sprawl and to ensure that "citizens, communities, local governments, and the private sector cooperate and coordinate with one another in comprehensive land use planning." RCW 36.70A.010. The GMA requires that counties adopt a Comprehensive Growth Management Plan (comprehensive plan) which, among other things, designates Urban Growth Areas (UGAs). UGAs are regions within which urban growth is encouraged and outside of which growth can occur only if it is not urban in nature. RCW 36.70A.110(1).
The first step in the process of establishing a comprehensive plan is for a county to adopt county-wide planning policies (CPPs). A CPP is a written policy statement created by county municipalities and used "solely for establishing a county-wide framework from which county and city comprehensive plans are developed." RCW 36.70A.210(1). CPPs ensure that city and county comprehensive plans are consistent with one another with regard to issues of regional significance, and thus CPPs must address policies for designation of UGAs, as well as policies for providing urban services, transportation, housing, and economic development. RCW 36.70A.210(3).
The GMA expressly provides for "early and continuous public participation in the development and amendment of comprehensive land use plans." RCW 36.70A.140. Citizens who attend and participate in the comprehensive plan hearings have standing to challenge provisions later adopted in a county's comprehensive plan. However, the GMA does not provide for public challenge to CPPs. Only cities or the governor may appeal a CPP to the Central Puget Sound Growth Management Hearings Board (the *378 Board); citizens may not appeal. RCW 36.70A.210(6).
In 1991, King County and its cities established CPPs. The CPPs consisted of written policies and maps in which the County's urban growth boundaries were drawn. Policy U-201 designated the Bear Creek Urban Planned Development site as a UGA. A CPP map also portrayed Bear Creek as a UGA. Neither the governor nor the cities within King County challenged Bear Creek's UGA designation in the CPPs.
In 1994, the County approved its comprehensive plan. The plan contained provisions for regulating growth, transportation and critical areas, and formally designated UGAs for King County. The plan adopted the CPPs' UGA provisions, explicitly designating the Bear Creek area as suitable for urban growth. Nine different developers and citizens' groups challenged provisions in the comprehensive plan. Petitioners in this case, Friends, appealed the Bear Creek UGA designation to the Board. Friends alleged that this "island" UGA did not meet the requirements set forth in the GMA for establishing UGAs.
The Board consolidated the petitions for review filed by the developers and citizens' groups and issued a Final Decision and Order in October 1995. See Vashon-Maury v. King County, Final Decision and Order, Central Puget Sound Growth Management Hearing Board (hereinafter CPSGMHB), No. 95-3-0008 (1995). The Order ruled on almost 60 different issues relating to the County's adoption of its comprehensive plan. In regard to Friends' petition, the Board held that the Bear Creek UGA was valid because the uncontested CPPs required that the County designate the area as urban. The Board concluded that because the UGA designation was mandated by the CPPs, which were not challenged and thus presumed valid, the UGA designation as adopted in the comprehensive plan must also be presumed valid and was immune from challenge. However, the Board observed that the undeveloped, unincorporated Bear Creek site, two miles from any other urban area, did not appear to meet the GMA criteria for urban growth designation. "[B]ut for the fact that the CPPs made the County do it and those CPPs were not challenged, the Board would have serious problems with the Bear Creek UPDs being designated within a UGA." Id. at 38. One member of the three member board dissented.
Two months later, in its Order on Motions to Reconsider and Motion to Correct, the Board reversed itself. The Board reiterated that the Bear Creek UGA did not meet any of the criteria required by the GMA, but this time held that the CPPs did not require the comprehensive plan to designate Bear Creek as a UGA. The Board found that the Bear Creek UGA designation contradicted other CPPs that discussed criteria for establishing UGAs. The Board reasoned that because the CPPs were internally inconsistent, they must be considered precatory, rather than directive. The Board concluded that:
[S]omething as incongruous as [the Bear Creek UGA designation] is simply an inconsistency with the general rule.... When such inconsistencies exist, the CPPs send mixed messages, subject to different interpretations. In short, they are ambiguous. The resulting effect is that these CPPs cannot be a directive and rigid template binding the Council's future exercise of its discretion in adopting its Plan and F[inal] UGA.
Vashon-Maury v. King County, Order on Mot. to Recon. and Mot. to Correct at 7-8, CPSGMHB, No. 95-3-0008, (1995).
Because the CPPs were internally inconsistent, the Board explained, they could not be directive and thus were open to citizen appeal when incorporated into the comprehensive plan. Addressing the merits of Friends' challenge to Bear Creek, the Board entered a finding of noncompliance and remanded to the County with instructions to delete the Bear Creek UGA, to justify it, or to redesignate it as a Fully Contained Community under RCW 36.70A.350. The Board declined to enter an order of invalidity for the Bear Creek UGA.[2]
*379 Case # 39333-2-I: "The CPP Case"
While King County began the work necessary to comply with the Board's remand order, it simultaneously instigated an Administrative Procedure Act (APA) appeal of that order to the King County Superior Court. The County maintained that the Board erred when it held that the CPPs were not directive. In essence, the County argued that in order for the CPPs to properly ensure consistency and to serve as a framework for comprehensive plans, the CPPs must direct municipalities' comprehensive plan decisions. The County further argued that the UGA provisions in the CPPs were not internally inconsistent and clearly mandated that the Bear Creek area be designated a UGA.
Meanwhile, Friends filed a separate petition for review of the Board's decision in Snohomish County Superior Court. Friends alleged that the Board erred in approving several population forecasts and in failing to enter an order of invalidity for the Bear Creek UGA. However, Friends non-suited the action because of improper service of its petition. Following the dismissal of the case in Snohomish County, Friends filed an answer, counter-petition and cross-petition in response to King County's CPP suit. Friends' answer disputed the County's assertion that the CPPs were directive. Friends' cross-petition restated their claims from the earlier Snohomish County petition, including the same request for relief. See King County v. Central Puget Sound Growth Mgt. Hearings Bd., 91 Wash.App. 1, 17, n. 30, 951 P.2d 1151 (1998).
Following briefing and oral argument, the court ruled in favor of the County. The court held that the CPPs directed the County's comprehensive plan to designate Bear Creek as a UGA. The court thus reversed the Board's Order on Reconsideration and reinstated the Board's original Final Decision and Order. The court also dismissed Friends' cross-petition in light of the fact that it was filed more than 60 days after the Board filed its original decision and was therefore untimely.[3]
Friends appealed. The Court of Appeals affirmed the trial court. It held that CPPs may be directive and that King County's CPPs clearly mandated that the Bear Creek area be designated urban. The court rejected Friends' contention that a cross-petition is an "ancillary procedural matter" governed not by APA deadlines for filing of petitions, but by court rule. Accordingly, the court held that Friends' cross-petition was subject to the 30 day deadline for filing of petitions and was therefore untimely.
Case # 40310-9 "The Moot Case"
While King County challenged the Board's holding regarding the CPPs, it simultaneously took steps to comply with the Board's remand order by redesignating the Bear Creek area as a Fully Contained Community (FCC). An FCC is an urban island, entirely separate from established UGAs. An FCC is specifically allowed under the GMA, but is subject to rigorous requirements. New FCCs may be approved only if: new infrastructure and impact fees are provided for; transit oriented site planning is implemented; buffers are provided between FCCs and UGAs; a mix of jobs, housing and services are provided; environmental protection has been addressed; and development regulations are implemented to discourage urban encroachment on non-urban areas. RCW 36.70A.350(1)(a)-(g). The County was given just over 100 days to comply with the Board's remand order.
The Board later reviewed this revised designation. At the hearing, Friends argued that the County's efforts during the remand period were insufficient to bring the Bear Creek area into compliance with the GMA as an FCC. However, the Board refused to consider *380 Friends' arguments, choosing instead to consider only whether the County had "procedurally complied" with the Board's remand order.[4] Because the County had taken steps to redesignate the area, the Board concluded that the County had procedurally complied with its order and accordingly issued a Finding of Compliance.
Friends then filed an action in King County Superior Court challenging the Board's refusal to examine whether the County's redesignation of Bear Creek as an FCC substantively complied with the GMA. However, after the trial court in the CPP case reversed the Board's order on reconsideration and reinstated the Board's original approval of the Bear Creek UGA (see above), the court in this case dismissed Friends' challenge as moot. Because the underlying remand order that forced the County to redesignate Bear Creek had been reversed, the issue of whether or not the County properly complied with that order was rendered irrelevant.
Friends appealed the dismissal and the case was consolidated with the "CPP case" and the "LUPA case." As stated above, the Court of Appeals affirmed the trial court's determination in the CPP case that the CPPs were directive. Therefore, the Court of Appeals agreed that Friends' challenge to the redesignated FCCs was moot.
Case # 39914-4-I: "The LUPA Case"
Within the Bear Creek area is a 1,000 acre parcel known as Blakely Ridge. In 1989, Port Blakely Tree Farms submitted an Urban Planned Development (UPD) application, seeking approval for an age-restricted development of 2,250 housing units, a 200 unit care facility, retail development, a golf course, trails, and open space. In 1995, Port Blakely Tree Farms completed a final Environmental Impact Statement (EIS) for the project. Under RCW 43.21C.030(2)(c)(iii), an EIS must include an examination of alternatives to the proposed project. The Blakely Ridge EIS considered three alternatives to the UPD approval: (1) subdivision and development of the property into one acre lots; (2) subdivision into five acre lots; and (3) the "no action" alternative. The five acre alternative was based on allowed development for the area under its current rural designation. The one acre alternative was based upon the site's zoning status in 1988, when Port Blakely Tree Farms submitted a subdivision application that, if complete, would have established a vested right to build under the zoning laws in effect at the time.
At the same time that the Board was examining the legality of the Bear Creek UGA, the King County Council was reviewing the Blakely Ridge UPD permit application. The Board filed its finding of noncompliance for the Bear Creek UGA and served the finding on King County shortly before the County made its permit decision. The County's legal counsel advised that, absent an order of invalidity for the Bear Creek UGA, the County could issue permits for development in the UGA. The County then approved the Blakely Ridge UPD permit and a preliminary plat of the property. This approval came after the Board had remanded the UGA to the County for redesignation, but before the County had complied with that order.
In January 1996, Friends appealed the Blakely Ridge UPD approvals by filing an action in Snohomish County Superior Court under the Land Use Petition Act (LUPA), RCW 36.70C. Friends argued that the EIS was fatally flawed because it impermissibly considered an "illegal" alternative and that this alternative served to "scare" the Council into approving the UPD. Friends also challenged the permit on the grounds that the County may not legally approve permits for an urban project in an area whose urban designation has been found by the Board to be inconsistent with the GMA. The trial court rejected these arguments. Friends appealed, and this case was consolidated with the "CPP case" and the "Moot case." The Court of Appeals affirmed the trial court.
*381 Friends petitioned this court for review of the Court of Appeals decision. Friends asserts that the Court erred in (1) upholding the Bear Creek UGA designation, (2) dismissing its APA claim as untimely, and (3) rejecting its permit and EIS challenges under LUPA. Friends asks this court to reinstate the Board's order on reconsideration, making the issue of the County's compliance with the Board's remand order no longer moot.

ANALYSIS

I
We will first address whether the unchallenged CPPs required the County to include Bear Creek in its UGA, and, if so, whether the Bear Creek UGA designation was consequently immune from citizen challenge when later incorporated into the County's comprehensive plan.
The Board held that the County's CPPs are directive and therefore obligated the County to adopt the Bear Creek UGA into its final comprehensive plan. The Board then assumed that because the County was required to adopt the provisions of the uncontested CPPs into its comprehensive plan, the provisions could not be challenged at the time of the comprehensive plan's adoption. The trial court and Court of Appeals accepted this reasoning without discussion and therefore prohibited Friends from challenging the UGA designation in the comprehensive plan.
Friends maintains that it has the right to challenge the Bear Creek UGA upon its adoption into the comprehensive plan, and to that end, argues that CPPs are not directive. According to Friends, the CPPs serve as a guide in the formation of city and county comprehensive plans, but specific provisions are not binding. We disagree and hold that CPPs may be directive. However, we conclude that Friends may still challenge the Bear Creek UGA. Even though the CPPs required the County to adopt the Bear Creek UGA, a provision adopted from the CPPs may be reviewed for compliance with the GMA when the provision is incorporated into the comprehensive plan.
Initially, we turn to whether the directive provisions of CPPs must be binding in order to fulfill their purpose under the GMA. The GMA requires county and city comprehensive plans to be consistent with each other in order to ensure harmonious land use planning. RCW 36.70A.100. RCW 36.70A.210(1) provides that "a `county-wide planning policy [CPP]' is a written policy statement or statements used solely for establishing a county-wide framework from which county and city comprehensive plans are developed and adopted pursuant to this chapter. This framework shall ensure that city and county comprehensive plans are consistent as required in RCW 36.70A.100." (emphasis added). Local governments are required to adopt regionally developed CPPs, from which local comprehensive plans, and then development regulations, are enacted. The CPPs are thus the major tool provided in the GMA to ensure that the comprehensive plans of each city within a county agree with each other. If the CPPs served merely as a nonbinding guide, municipalities would be at liberty to reject CPP provisions and the CPPs could not ensure consistency between local comprehensive plans. The Board was therefore correct to conclude that CPPs are binding on the County.
Although we hold that a county is constrained to follow CPP directives, we disagree with the Board's conclusion that the directive nature of the CPPs immunizes the provisions from citizen challenge when incorporated into the comprehensive plan. Under the GMA, counties are required to "provid[e] for early and continuous public participation in the development and amendment of comprehensive land use plans...." RCW 36.70A.140. Any individual, partnership, corporation, or other entity with standing may appeal a provision of a county's plan to ensure that it is in compliance with the requirements of the GMA. RCW 36.70A.280(2)-(3). This appeal process benefits both those who seek to limit development and those who seek to protect their development rights. In contrast, the Board's approach shields from citizen appeal those provisions of a comprehensive plan that are adopted from directive CPPs. This approach creates a conflict between *382 statutory provisions regarding the effect of the CPPs and the GMA's provisions for citizen involvement.
Moreover, RCW 36.70A.110(5) provides that final UGAs shall be adopted "at the time" of comprehensive plan adoption. Applying the Board's interpretation would undermine the schedule for UGA adoption laid out in the GMA by effectively allowing UGAs to be adopted at the time that the CPPs are formulated.
We conclude that a comprehensive plan provision is not immune from challenge merely because the County was required to adopt the provision by its CPPs. Even if a county must follow uncontested CPP directives, once those provisions are adopted into the comprehensive plan they become subject to citizen appeal. RCW 36.70A.280 allows provisions in comprehensive plans to be appealed by citizens and corporations. There is no statutory language immunizing provisions of the comprehensive plan from review on the grounds that those provisions are mandated by the CPPs. A UGA designation that blatantly violates GMA requirements should not stand simply because CPPs mandated its adoption. Rather, upon a determination that the provision violates the GMA, it should be stricken from both the comprehensive plan and the CPPs. This approach harmonizes RCW 36.70A.210's mandate that CPPs ensure comprehensive plan consistency, while respecting the appeal provisions of RCW 36.70A.280, .290.[5]
We concur with the Court of Appeals' holding that the CPPs required the County to include the Bear Creek UGA in its comprehensive plan. However, we hold that the Bear Creek UGA provision in the comprehensive plan is nevertheless subject to citizen challenge and may be invalidated if found to be contrary to the GMA. We accordingly reverse the Court of Appeals and reinstate the Board's Order on Reconsideration requiring the County to justify or redesignate the Bear Creek UGA.

II
We turn next to the issue of mootness. As noted above, our conclusion that the Bear Creek UGA is not immune from Friends' challenge requires us to reinstate the Board's Order on Reconsideration. Because the Board's remand order is reinstated, the legitimacy of the County's actions pursuant to that order (redesignation of the Bear Creek UGA as an FCC) is no longer moot. The issue of whether the County's redesignation of Bear Creek brought the area into substantive compliance with the GMA has never been decided, as the Board reviewed the County's actions for procedural compliance only. Neither the Superior Court or Court of Appeals addressed this question. Furthermore, this issue has not been adequately briefed by the parties. Accordingly, we remand to the Growth Management Board for a determination of whether the County's redesignation of the Bear Creek UGA as an FCC was adequate to bring the area into substantive compliance with the GMA.

III
We will now consider whether Friends' cross-petition is subject to the 30 day statute of limitation for petitions for review under the Washington APA. Friends filed its answer, counter-petition and cross-petition (together, cross-petition) more than 30 days after the Board had issued its decision. The trial court considered Friend's answer, but dismissed those claims submitted in Friends' cross-petition as untimely. The Court of Appeals affirmed the trial court's decision. Friends now argues that its cross-petition was not subject to the 30 day APA limit because a cross-petition is an ancillary procedural matter governed by the civil rules.
*383 The APA provides the exclusive means for seeking judicial review of agency action. RCW 34.05.510. A party seeking judicial review of an agency order must file and serve a petition for review within 30 days of the agency decision. RCW 34.05.542(3). The GMA contains a complementary provision, requiring any appeal of a Board decision to be filed in superior court within 30 days. RCW 36.70A.300(5). The APA makes no special provision for the timing of filing cross-petitions, counter-petitions, or any other petitions. However, "ancillary procedural matters" are governed by court rule.[6] RCW 34.05.510(2).
Whether a cross-petition in an administrative appeal is a petition governed by the APA 30 day limit, or is an ancillary matter governed by court rule, is an issue of first impression before this court. Where there is no Washington case law construing provisions of the Washington APA, federal precedent may serve as persuasive authority. Tapper v. Employment Sec. Dep't, 122 Wash.2d 397, 405, 858 P.2d 494 (1993); see also Inland Empire Distrib. Sys., Inc. v. Utilities & Transp. Comm'n, 112 Wash.2d 278, 283, 770 P.2d 624 (1989) ("[W]hile federal decisions are not controlling, they are persuasive authority when construing state acts which are similar to the federal act.").
Federal cases that have addressed this issue have held that, in cases involving appeals of agency decisions, cross-petitions are subject to the same filing deadlines as the original petitions. See, e.g., Reich v. Trinity Indus., Inc., 16 F.3d 1149 (11th Cir. 1994) (dismissing cross-petition for failure to file within statutorily prescribed 60-day period for appeals of agency order); see also JEM Broadcasting Co. v. Federal Communication Comm'n, 22 F.3d 320 (D.C.Cir.1994) (acknowledging that the APA statutory limitation on petitions for review are jurisdictional in nature and reflect the high value placed on finality in administrative processes).
Washington Utils. & Transp. Comm'n v. Federal Energy Regulatory Comm'n, 26 F.3d 935 (9th Cir.1994) is instructive. There, the Ninth Circuit held that intervenors to an administrative appeal could not bring up new claims outside the statutory deadline for filing petitions for review of administrative decisions. Id. at 941-42. The court granted a party leave to intervene in the case after the time for filing petitions for review had expired. However, the court refused to address new issues raised by the intervenors not previously addressed in the original petition. The court concluded that a petition for review of one aspect of an administrative order does not open up the entire order for review.
Friends argues that a rule requiring cross-petitions to be filed within the statutorily prescribed deadline for petitions would result in the filing of protective lawsuits. However, adopting Friends' open-ended approach would also result in administrative problems. In this case, the Board's decision involved over 60 issues and 15 separate parties. If cross-petitions could be filed at any time, once the County filed its appeal of a particular issue decided by the Board, all issues that had been before the Board would be subject to appeal during the litigation. Thus, no participant in the original administrative decision could consider an issue finalized. Rather, they would be compelled to vigilantly follow each step in the litigation to make certain that a party did not raise some new issue in a cross-petition that would affect their interests. An administrative decision could never be considered final until the completion of all litigation of any issue addressed in an agency decision.
Given analogous federal precedent and the weighty administrative concerns, we reject Friends' invitation to characterize a cross-petition as an ancillary matter for purposes of APA review. We therefore affirm the Court of Appeals' dismissal of Friends' cross-petition as untimely under the APA.

*384 IV
We next address whether the County violated the GMA when it issued UPD permits for the Blakely Ridge project after the Board had entered a finding of noncompliance for the Bear Creek UGA. We hold that the permits were properly issued.
The GMA includes a review process for determining whether county comprehensive plans are in compliance with the requirements of the GMA. The GMA provides two distinct alternatives when a Growth Management Hearings Board finds that a local government's comprehensive plan or development regulation does not comply with the GMA: the first is a finding of noncompliance under RCW 36.70A.300(3)(b); the second is a finding of invalidity under RCW 36.70A.302.
If the Board finds "noncompliance" it may remand the matter to the county and specify action to be taken and a time within which compliance must occur. County plans and regulations, which are presumed valid upon adoption pursuant to RCW 36.70A.320, remain valid during the remand period following a finding of noncompliance. RCW 36.70A.300(4) ("Unless the board makes a determination of invalidity as provided in RCW 36.70A.302, a finding of noncompliance and an order of remand shall not affect the validity of comprehensive plans and development regulations during the period of remand.")[7] Unlike a finding of noncompliance, a finding of invalidity requires the Board to make a determination, supported by findings of fact and conclusions of law, that the continued validity of the provision would substantially interfere with the fulfillment of the goals of the GMA. RCW 36.70A.302(b). Upon a finding of invalidity, the underlying provision would be rendered void.
This dichotomy was further explained in this court's recent decision in Skagit Surveyors & Eng'rs, LLC v. Friends of Skagit County, 135 Wash.2d 542, 958 P.2d 962 (1998). In that case, we emphasized the significance of a finding of invalidity versus a finding of noncompliance. Skagit cited to the legislative history of the GMA to explain the rationale for differentiating between the two determinations.
If a comprehensive plan is declared invalid, or if a development regulation is found to be inconsistent with the plan, the validity of any permits issued by the local government under the authority of those development regulations will be called into question.
Because there are many different circumstances in which this issue may arise, it is not possible to develop a single principle which would apply in all cases. Therefore, the Task force is recommending giving the Growth Management Hearings Board discretion to make the determination on a case-by-case basis. The presumption should be that the plan or regulation will remain in effect unless the Board determines this would violate the policy of the [Growth Management Act].
Skagit, 135 Wash.2d at 561-62, 958 P.2d 962 (citing Governor's Task Force on Regulatory Reform, Final Report 52 (1994)).
In this case, Friends asked the Board to enter an order of invalidity, and the Board refused to do so.[8] Absent an order of invalidity, the urban designation of the Bear Creek area remained valid during the remand period, and the County was free to rely on that urban designation when issuing the Blakely Ridge permits.[9] We affirm the *385 Court of Appeals' holding that the UPD permit was properly issued.

V
Friends' final argument is that the Blakely Ridge Environmental Impact Statement (EIS) was fatally flawed by the inclusion of the one acre lot building alternative. The adequacy of an EIS is subject to de novo review. However, an agency's determination of adequacy shall be afforded substantial weight. Weyerhaeuser v. Pierce County, 124 Wash.2d 26, 37-38, 873 P.2d 498 (1994).
Washington courts review an EIS under the rule of reason, which requires the EIS to contain a "reasonably thorough discussion of the significant aspects of the probable environmental consequences." Citizens Alliance To Protect Our Wetlands v. City of Auburn, 126 Wash.2d 356, 362, 894 P.2d 1300 (1995) (citations omitted). The State Environmental Policy Act of 1971 (SEPA) directs that "alternatives to the proposed action" be included in an EIS. RCW 43.21C.030(c)(iii). Under the Washington Administrative Code, consideration by the County Council of reasonable alternatives is mandatory. WAC 197-11-440(5)(b). SEPA rules define "reasonable alternatives" as less environmentally costly action that "could feasibly attain or approximate a proposal's objectives." WAC 197-11-786.
The Blakely Ridge EIS considered three alternatives, in addition to the UPD approval: (1) subdivision and development of the property into one acre lots, (2) subdivision into five acre lots, and (3) the "no action" alternative. Of these alternatives, the UPD proposed the densest development, while the one acre and five acre subdivisions presented intermediary impacts between the proposed UPD and the "no action" alternative.
The five acre lot alternative was allowable under the existing rural zoning designation for the area. In contrast, the one acre alternative was not authorized by any current zoning law. However, the one acre alternative would have been allowed under zoning laws in effect in 1988. In that year, Port Blakely submitted a permit application to develop the land. Friends argues that Port Blakely's right to build at that density did not vest because Port Blakely's application did not include certificates of water and sewer availability. Because Port Blakely did not have a legal right to build one acre subdivisions, Friends asserts that inclusion of the alternative in the EIS was improper.
Contrary to Friends' assertions, an alternative may be taken into account for comparative purposes in an EIS, even if the alternative's legal status is contested. As the Court of Appeals observed:
If we required all alternatives included in an EIS to be of certain legal status, projects would come to a halt until such status could be judicially determined, assuming that a determination could be obtained without issuing an advisory ruling. In order to avoid this outcome, EISs would include only unchallenged alternatives, rendering the discussion of reasonable alternatives superficial, and weakening their force as an effective decision-making tool.
Central Puget Sound Growth Mgt. Hearings Bd., 91 Wash.App. at 31, 951 P.2d 1151. An alternative considered for purposes of an EIS need not be certain or uncontested, it must only be reasonable. As stated above, under WAC 197-11-440(5)(b), a reasonable alternative is one that could feasibly attain or approximate a proposal's objectives at a lower cost to the environment.
The one-acre alternative does not pose greater environmental costs than the proposed project for the purposes of WAC 197-11-440(5)(b). The final EIS indicates that the one acre alternative presented greater impacts in some areas, and fewer impacts in others. For example, the one acre alternative would require the creation of 121 fewer acres of impervious surface, it would have a lower potential to alter groundwater flow patterns and would develop approximately 2,000 fewer residences that the UPD. Furthermore, the one acre alternative would produce 45 percent less carbon monoxide concentrations *386 and less water consumption. Clerk's Papers at 263-80 (# 39914-4-I, Blakely Ridge Final EIS). The Hearing Examiner characterized the one acre alternative as a "midpoint" between the UPD and the rural five acre alternative.[10]
Although Friends couches their objection in terms of the EIS, Friends seems most concerned by the possibility that the County approved the UPD merely out of fear that the land might otherwise be developed into one acre sprawl. However, Friends presents no persuasive evidence that the fear of the one acre alternative actually influenced the Council's decision. The Council was well aware that Friends contested the vested status of Port Blakely's one acre building right.
For these reasons, we find Friends' arguments to be without merit and therefore affirm the Court of Appeals' holding that the EIS was not flawed by the inclusion of the one acre alternative.

Attorneys' Fees
In their supplemental briefs, both Quadrant and King County request attorneys' fees as prevailing parties in their LUPA appeal. King County has since withdrawn its request for fees.
RCW 4.84.370(1) entitles the substantially prevailing party in litigation involving permit issuance to recover attorneys' fees. This provision allows for attorneys' fees only if the party prevailing on appeal also prevailed before the county and in all prior judicial decisions. RCW 4.84.370(1). In this case, the County Council rejected Friends' arguments and approved the Blakely Ridge UPD permits as well as the preliminary subdivision of the plat and amended the zoning conditions applicable to the Port Blakely project. Both the trial court and the Court of Appeals upheld this decision. In order to satisfy the requirements of the attorneys' fees provision under RCW 4.84.370, Quadrant must prevail before this court. We hold that Quadrant has not substantially prevailed.
A prevailing party is the one "who receives an affirmative judgment in its favor." Kysar v. Lambert, 76 Wash.App. 470, 493, 887 P.2d 431 (1995) (quoting Marasi v. Lau, 71 Wash.App. 912, 915, 859 P.2d 605 (1993)). The determination as to who substantially prevails depends upon the substance of the relief afforded to the parties. Marine Enters., Inc. v. Security Pac. Trading Corp., 50 Wash.App. 768, 772, 750 P.2d 1290 (1988) (citation omitted). If both parties prevail on major issues, there may be no prevailing party. American Nursery Prods., Inc. v. Indian Wells Orchards, 115 Wash.2d 217, 234-35, 797 P.2d 477 (1990).
Because of the unique procedural stance in which this particular case comes to us, it is impossible to determine at this time whether Quadrant is a prevailing party. Although we reject Friends' specific permit challenges under LUPA, we find in favor of Friends on the issue of whether the Bear Creek urban designation is subject to citizen challenge. Ultimately, whether the permits are valid will depend on the outcome of the Board's determination on remand. During oral argument, Quadrant admitted that their rights under the present zoning had not yet vested. Friends v. King County, No. 66904-0 (Oral Argument, Audio Tape, Side 1) (Wash. Supreme Ct. Jan. 14, 1999). If, on remand, the urban designation or the area's redesignation as an FCC is declared invalid, the area may not legally support urban development. The validity of the project permits would then be called into question. Until the legitimacy of the permits is finally determined, Quadrant cannot be said to have substantially prevailed on this matter. Attorneys' fees are denied.

CONCLUSION
We affirm the Court of Appeals' dismissal of Friends cross-petition as untimely and also affirm the Court of Appeals' rejection of Friends LUPA claims. However, we reverse the Court of Appeals on the issue of whether the Friends may challenge the comprehensive plan provision designating the Bear Creek area as an urban growth area. We *387 therefore remand to the Board for a determination of whether the County has adequately complied with the terms of the Board's Order on Reconsideration by justifying the Bear Creek urban designation under the terms of the GMA or by redesignating the area as an FCC.
Guy, C.J., Smith, Johnson, Madsen, Alexander, Talmadge, Sanders, and Ireland, JJ., concur.
NOTES
[1] At the start of this litigation, both Quadrant and Port Blakely Tree Farms owned land in the area and were parties to this suit. In August of 1998, Quadrant acquired all of Port Blakely's interest in the land and Port Blakely withdrew from the case. Supp. Br. of Quadrant at 1 n. 2.
[2] RCW 36.70A.302(3)(a) allows the Growth Management Hearings Board (the Board) to enter an order of invalidity for any part of a comprehensive plan that "substantially interfere[s] with the fulfillment of the goals of [the Growth Management Act]." The Board entered orders of invalidity for other contested provisions in the comprehensive plan, but not for the Bear Creek Urban Growth Area (UGA).
[3] RCW 34.05.542 requires a petition for review of an agency order to be filed within 30 days after service of the final order. RCW 34.05.542(2). See also RCW 36.70A.300(5) (Under the Growth Management Act (GMA), any party aggrieved by a final decision of the Board may appeal the decision to superior court within 30 days of the final order.).
[4] The Board's decision to evaluate only the County's procedural compliance was an anomaly, later overturned by the Board in an unrelated case. The Board now reviews actions taken pursuant to remand for both procedural and substantive compliance. Port of Seattle v. City of Des Moines, CPSGMHB No. 97-3-0014, Amended Notice of Compliance Hearing at 2 (1997).
[5] This approach is also supported by the Board's own holdings regarding the nature of County-wide Planning Policies (CPPs). In discussing the nature and effect of CPPs, the Board has held that CPPs may be directive only if they meet three criteria: (1) a policy must meet a legitimate regional objective, (2) it may not usurp a city's land use powers, and (3) it must be consistent with other relevant provisions in the GMA. City of Snoqualmie v. King County, CPSGMHB No. 92-3-0004 (1993). The third provision requires substantive compliance. By the Board's own precedent, a CPP cannot be directive if it violates the GMA.
[6] Ancillary is defined as "[a]iding; attendant upon; describing a proceeding attendant upon or which aids another proceeding considered as principal. Auxiliary or subordinate." Black's Law Dictionary 85 (6th ed.1990). The Washington Administrative Procedure Act (APA) lists as examples of ancillary matters: "intervention, class actions, consolidation, joinder, severance, transfer, protective orders, and other relief from disclosure of privileged or confidential material." RCW 34.05.510(2).
[7] The GMA provisions regarding determinations of invalidity were amended in 1997 and recodified as RCW 36.70A.302. Laws of 1997, ch. 429, § 16. However, the language of the current provision was not substantively changed. See Skagit Surveyors & Eng'rs, LLC v. Friends of Skagit County, 135 Wash.2d 542, 560 n. 10, 958 P.2d 962 (1998) (observing that the two provisions are substantially the same).
[8] In its cross-petition, Friends challenged the Board's failure to enter an order of invalidity. However, as explained above, Friends forfeited this argument by filing their cross-petition more than 30 days after the Board's order.
[9] We also reject Friends' additional contention that the Land Use Petition Act (LUPA) requires the court to independently review whether an underlying urban designation in a comprehensive plan is consistent with the GMA. LUPA expressly excludes from judicial review "[l]and use decisions of a local jurisdiction that are subject to review by a quasi-judicial body created by state law, such as the ... growth management hearings board." RCW 36.70C.030(1)(a)(ii). The lawfulness of a county's UGA designation may not be reviewed in a LUPA petition because the challenged county action is subject to review by the Board.
[10] Hearing Examiners Report and Recommendation to the King County Council for the Blakely Ridge UPD (Sept. 27, 1995) at 3, identified as King County Council Ex. C-4. (Attach. B to this Supplemental Br.).