83 P.3d 433 (2004)
119 Wash.App. 886
LAKESIDE INDUSTRIES, a joint venture of Red Samm Mining Co., Inc., a Washington corporation, and Black River Sand & Gravel, Inc., a Washington corporation; Nielsen Pacific Ltd., a Washington corporation; and Holroyd Company, Inc., a Washington corporation, Respondents/Cross-Appellants,
v.
THURSTON COUNTY, a municipal corporation; Friends Of Nisqually, a Washington non-profit corporation; and The Nisqually Indian Tribe, Appellants/Cross-Respondents.
No. 29188-6-II.
Court of Appeals of Washington, Division 2.
January 13, 2004.
As Amended February 24, 2004.
*435 Elizabeth Petrich, Attorney at Law, Barnett N. Kalikow, Kalikow & Gusa PLLC, Olympia, WA, Bill Tobin, Attorney at Law, Vashon, WA, for Appellants.
Alexander Weal Mackie, Perkins Coie LLP, Olympia, WA, John William Hempelmann, Cairncross & Hempelmann PS, Seattle, WA, for Respondents.
*434 ARMSTRONG, J.
Lakeside Industries applied for a special use permit to construct an asphalt manufacturing and recycling plant in the Nisqually Valley. Although the County opposed the project, it issued Lakeside a mitigated determination of non-significance under the State Environmental Policy Act (SEPA). Finding that the project met the specific conditions of the county code, a hearing examiner approved the permit. But the county commissioners reversed the decision, concluding that the project was not consistent with the general purposes of the Nisqually Sub-Area Plan, a plan the County adopted to preserve the agricultural and pastoral character of the valley. Lakeside appealed to the Mason *436 County Superior Court, which reinstated the hearing examiner's decision to allow asphalt manufacturing but rejected Lakeside's request to recycle asphalt. The County and several citizen groups appeal; Lakeside appeals the denial of its request to recycle asphalt. Because the commissioners lacked legal authority to apply the sub-area plan's general purpose to deny a use the County's zoning code specifically allowed, we affirm the trial court.

FACTS
Lakeside applied for a Special Use Permit to build an asphalt production and recycling facility in the Nisqually Valley Planning Area. The proposed facility would be located within the Holroyd gravel mine, which operates within the area under a valid use permit allowing the facility to expand mineral extraction operations. The Holroyd site is subject to the Nisqually Sub-Area Plan. Under the sub-area plan, the County evaluates special land uses for compatibility with the "Agricultural/Pastoral Character" of the Nisqually Valley. Clerk's Papers (CP) at 401.
The Board of County Commissioners adopted the sub-area plan in 1992. The County readopted it in 1995, when it amended its Comprehensive Plan to comply with Washington's Growth Management Act.
The proposed asphalt facility would be approximately two miles upwind and upriver from the Nisqually National Wildlife Refuge, home to numerous wildlife species and endangered salmon. The groundwater around the mine site is between four and fifteen feet below the extremely porous surface. The site is also located in the County's aquifer protection district. The County has spent approximately $2.4 million to purchase development rights in the immediate area adjacent to the proposed facility to prevent environmental damage.
Thurston County staff conducted a project environmental review and concluded the proposed asphalt facility did not comply with the sub-area plan. Specifically, the reviewing agency denied Lakeside's use permit request after concluding the facility failed to meet the sub-area plan policies regarding rural environment, commercial development, and asphalt reprocessing. Local citizens were also skeptical about whether the asphalt plant was consistent with the sub-area plan policies. Nevertheless, the County issued a Mitigated Determination of Non-Significance, concluding the asphalt plant would not have probable adverse significant impacts on the environment. A local citizen group, Friends of the Nisqually (Friends), and the Nisqually Indian Tribe appealed the non-significance determination, asking the County to produce a full Environmental Impact Statement.
On review, the Thurston County hearing examiner upheld the non-significance determination and granted the use permit after concluding the project was consistent with applicable county plans and codes. Among other things, the hearing examiner considered area zoning and project impacts to groundwater, drainage, traffic, flooding, noise, and air quality. Friends and the Nisqually Tribe appealed the use permit approval to the Board.
After a closed hearing, the Board concluded the proposed Lakeside asphalt plant was not consistent with sub-area plan policies because: (1) the sub-area plan generally prohibits new industrial uses, (2) the sub-area plan specifically prohibits asphalt recycling, (3) the existing extraction gravel site never processed asphalt, and (4) the proposed asphalt plant does not preserve the area's existing rural character. Accordingly, on September 17, the Board reversed the hearing examiner's approval of Lakeside's use permit. On October 24, Lakeside appealed the Board's use permit denial to Mason County Superior Court under Washington's Land Use Petition Act (LUPA).[1]
On November 9 and 14, Friends and the Nisqually Tribe filed answers to Lakeside's LUPA petition and challenged the hearing examiner's non-significance determination. Friends and the Nisqually Tribe also moved to dismiss or change venue, claiming Mason *437 County Superior Court lacked jurisdiction to hear Lakeside's LUPA petition based on article IV, section 6 of the Washington Constitution and RCW 4.12.010.[2]
The Mason County Superior Court denied a venue change, ruling that the Board was not a "court" under the constitutional language. The court also dismissed Friends' and the Nisqually Tribe's non-significance determination challenge because they had not filed their appeal within LUPA's 21-day statutory time limit.
After considering the case on the merits, the court reversed the Board's decision to deny Lakeside's use permit, but it concluded that the sub-area plan precluded asphalt recycling within the plan's area.

ANALYSIS

I. Standard of Review
When reviewing a superior court's decision on a land use petition, we stand in the same position as the superior court. Biermann v. City of Spokane, 90 Wash.App. 816, 821, 960 P.2d 434 (1998) (citation omitted). A party who seeks relief under LUPA carries the burden of meeting one of the standards in RCW 36.70C.130(1). Schofield v. Spokane County, 96 Wash.App. 581, 586, 980 P.2d 277 (1999). Under LUPA, we review the decision of the local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals. RCW 36.70C.020(1); Citizens to Preserve Pioneer Park LLC v. City of Mercer Island, 106 Wash.App. 461, 474, 24 P.3d 1079 (2001). Here, the Board did not alter any of the hearing examiner's findings of fact. Accordingly, the Board acted as an appellate body in its review and it was bound by the hearing examiner's findings of fact. Maranatha Mining, Inc. v. Pierce County, 59 Wash.App. 795, 802, 801 P.2d 985 (1990).
The relevant standards for granting relief are, therefore, whether the Board erroneously interpreted the law and whether the Board made a clearly erroneous application of the law to the facts. RCW 36.70C.130(1)(b), (d). Whether the Board erroneously interpreted the law is a question of law reviewed de novo. Schofield, 96 Wash. App. at 586, 980 P.2d 277. And the Board has made a clearly erroneous application of law to the facts if we are left with the definite and firm conviction that it committed a mistake. Schofield, 96 Wash.App. at 586, 980 P.2d 277.

II. Conflict Between Sub-Area Plan Policy and Specific Zoning Code
Generally, a specific zoning ordinance will prevail over an inconsistent comprehensive plan. Weyerhaeuser v. Pierce County, 124 Wash.2d 26, 43, 873 P.2d 498 (1994) (citing Cougar Mountain Assoc. v. King County, 111 Wash.2d 742, 757, 765 P.2d 264 (1988)). Because a comprehensive plan is a guide and not a document designed for making specific land use decisions, conflicts concerning a proposed use are resolved in favor of the more specific regulations. Citizens for Mount Vernon v. City of Mount Vernon, 133 Wash.2d 861, 873, 947 P.2d 1208 (1997). Thus, to the extent the comprehensive plan prohibits a use that the zoning code permits, the use is permitted. Weyerhaeuser, 124 Wash.2d at 43, 873 P.2d 498. But where the zoning code itself expressly requires a site plan to comply with a comprehensive plan, the proposed use must satisfy both the zoning code and the comprehensive plan. See Weyerhaeuser, 124 Wash.2d at 43, 873 P.2d 498.
Thurston County Code (TCC) 20.54.040 [zoning code] states in part:
1. Plans, Regulations, Laws. The proposed use at the specified location shall comply with the Thurston County Comprehensive Plan and all applicable federal, state, regional, and Thurston County laws or plans.
2. Underlying Zoning District. The proposed use shall comply with the general purposes and intent of the applicable zoning district regulations and subarea plans.

*438 3. Location. No application for a special use shall be approved unless a specific finding is made that the proposed special use is appropriate in the location for which it is proposed. This finding shall be based on the following criteria:
a. Impact. The proposed use shall not result in substantial or undue adverse effects on adjacent property, neighborhood character, natural environment, traffic conditions, parking, public property or facilities, or other matters affecting the public health, safety and welfare. However, if the proposed use is a public facility or utility deemed to be of overriding public benefit, and if measures are taken and conditions imposed to mitigate adverse effects to the extent reasonably possible, the permit may be granted even though the adverse effects may occur.
TCC 20.54.040.
TCC 20.54.070 UseSpecific Standards reads in part:
21. Mineral Extraction. Mineral extraction and accessory uses are subject to the following provisions and the provisions of Chapter 17.20 TCC, the Thurston County Mineral Extraction Code:
a. Accessory Uses.
i. The following accessory uses are allowed only when expressly permitted in a special use permit issued by the approval authority: ... asphalt production (batching or drum mixing), concrete batching, storage or use of fuel, oil or other hazardous materials, and equipment maintenance.
ii. Accessory [uses] are permitted only in conjunction with an existing mineral extraction operation. Recycling of asphalt or concrete is permitted as an accessory use only in conjunction with a permitted crusher and in accordance with any health department requirements.
TCC 20.54.070(21).
The sub-area plan prohibits "large scale commercial development within the Nisqually Valley, while recognizing existing commercial activities and designated commercial areas." CP at 400. The sub-area plan also seeks to "[m]inimize the addition of new commercial activities within the planning area by prohibiting commercial expansion of properties not currently zoned beyond the existing lot and use [and] promote the relocation of existing commercial uses to zoned areas." CP 400 (Policy E.1).
The County argues its land use regulations require that all special uses comply with both specific and general standards expressed in the zoning code and in any comprehensive or applicable sub-area plan. Thus, the County maintains that Lakeside's proposed use must meet the specific policies of the sub-area plan. And, according to the County, the sub-area plan is ambiguous because it prohibits large scale commercial development but also recognizes the use of mined out gravel pits for new operations. Because of this ambiguity, according to the County, we should defer to the Board's interpretation that asphalt manufacturing, as a large scale commercial development, is prohibited in the Nisqually Valley.
A statute is ambiguous when it is amenable to two reasonable interpretations. Wingert v. Yellow Freight Sys. Inc., 146 Wash.2d 841, 852, 50 P.3d 256 (2002) (citation omitted). If the statute is ambiguous, we construe it to give effect to legislative intent. Whatcom County v. City of Bellingham, 128 Wash.2d 537, 546, 909 P.2d 1303 (1996) (citation omitted). We also defer to a statutory interpretation of the administrative agency charged with administering and enforcing the statute. Hama Hama Co. v. Shorelines Hearings Bd., 85 Wash.2d 441, 448, 536 P.2d 157 (1975).
We do not find the sub-area plan ambiguous. While the plan does prohibit new large scale, commercial development, it also recognizes existing commercial activities and does not expressly prohibit asphalt production within the planning area. Instead, the sub-area plan recognizes existing mining operations and allows for new mining operations with sufficient visual buffers. And the plan allows accessory uses within the mined out portion of a gravel pit after a site review. The plan specifically identifies the Holroyd mine as an official mineral resource within the Nisqually Valley. Finally, the County's zoning code specifically allows asphalt production *439 as an accessory use on land permitted for washing, sorting, or crushing of rock or gravel. TCC 20.54.070(21). Thus, the sub-area plan as a general policy prohibits large scale commercial development; but it does not specifically exclude asphalt production. Rather the plan, together with the zoning code, specifically allows asphalt production if the project qualifies for a special use permit.

III. Hearings Examiner Decision The Board Decision
In approving Lakeside's special use permit, the examiner considered area zoning and the project's likely impacts to groundwater, drainage, traffic, flooding, noise, and air quality. The examiner found that the asphalt plant the County zoning code specifically authorized would not significantly impact these sensitive areas.
The Board did not alter the examiner's findings but essentially concluded that the asphalt plant was inconsistent with the sub-area plan's general purposes, including the prohibition of large scale commercial development. But the Board may not invoke the plan's general purpose statements to overrule the specific authority granted by the zoning code to manufacture asphalt as an accessory use to mining. See Weyerhaeuser, 124 Wash.2d at 43, 873 P.2d 498. The Board's decision violates the rule that specific zoning laws control over general purpose growth management statements, and fails to provide meaningful standards for review of a county decision to deny a permit. Sunderland Family Treatment Servs. v. City of Pasco, 127 Wash.2d 782, 797, 903 P.2d 986 (1995).
But the County argues it can, nevertheless, consider special use permits on a case-by-case basis. It points to Nisqually Sub-Area Plan Policy E.6, which allows the County to "[e]valuate all the allowable and special uses within the 1/5 zone [the Nisqually Valley] to determine if they would be compatible with the `Agricultural/Pastoral Character' of the Nisqually Valley." CP at 401. The County explains that it has not yet done a legislative evaluation of which special uses are compatible with the Nisqually Valley. Thus, according to the County, it can make this determination on a case-by-case basis. We disagree. The County's case-by-case argument is simply another way of allowing it to reject a specifically allowed special use (asphalt manufacturing) by invoking the general purpose statement underlying the sub-area plan. And again, a case-by-case approval procedure would provide no fixed standards for an applicant or a reviewing court.
Finally, the County argues that Weyerhaeuser v. Pierce County, 124 Wash.2d 26, 873 P.2d 498 (1994), allows it to test Lakeside's application against the sub-area plan's standards. In Weyerhaeuser, the court held that where the zoning code expressly requires a proposed use to comply with the County's comprehensive plan, the comprehensive plan standards must be met. Weyerhaeuser, 124 Wash.2d at 43, 873 P.2d 498. The applicant proposed to build a landfill in an area zoned rural-residential with a recommended low-density residential use. Weyerhaeuser, 124 Wash.2d at 42, 873 P.2d 498. But the property was zoned "G," which allowed a landfill use. The court held that although the landfill was not a residential use, the comprehensive plan did not proscribe the use. Rather, the landfill fit within the rural-residential classification because of the extremely broad nature of the comprehensive plan. Weyerhaeuser, 124 Wash.2d at 44, 873 P.2d 498. Similarly, the sub-area plan allows accessory uses to existing mining operations and it recognizes the Holroyd site as an existing mine. And the zoning code allows asphalt manufacturing as an accessory use. Further, the sub-area plan allows existing commercial activities; only the broad purpose statement to preclude new large scale commercial development could conceivably prohibit Lakeside's proposed plant. Thus, the proposal fits within the plan's broadly stated commercial development purpose to allow existing activities with accessory uses but preclude new large scale activities.
We conclude that the Board either wrongly interpreted the law or misapplied the law to the facts when it reversed the hearing examiner. We affirm the trial court's decision *440 reinstating the hearing examiner's decision with one modification.

IV. The LUPA AppealFiling Time
Thurston County's Code does not permit a party to appeal a SEPA decision to the Board. TCC.17.09.160(k).[3] The County Code also requires judicial appeals of a hearing examiner's decision to commence within the time period provided for appealing the underlying governmental action. TCC 17.09.160(T)(1). Under LUPA, a "land use petition is barred, and the court may not grant review, unless the petition is timely filed with the court and timely served." RCW 36.70C.040(2); Chelan County v. Nykreim, 146 Wash.2d 904, 932, 52 P.3d 1 (2002). A LUPA petition is timely only if it is filed and served within 21 days of the issuance of the land use decision. RCW 36.70C.040(3); Nykreim, 146 Wash.2d at 932, 52 P.3d 1. A land use decision becomes issued three days after it is mailed by the local jurisdiction. RCW 36.70C.040(4)(a). Where procedural requirements are not met, the court lacks jurisdiction to hear the appeal. Overhulse Neighborhood Ass'n. v. Thurston County, 94 Wash.App. 593, 597, 972 P.2d 470 (1999) (citations omitted). LUPA's purpose is to reform the court's review of land use decisions made by local jurisdiction by establishing uniform, expedited appeal procedures in order to provide consistent, predictable, and timely judicial review. Nykreim, 146 Wash.2d at 932, 52 P.3d 1.
Furthermore, SEPA appeals must combine review of SEPA issues with the related government action on the merits. State ex rel. Friend Rikalo Contractor v. Grays Harbor County, 122 Wash.2d 244, 249, 857 P.2d 1039 (1993). Linking the two precludes "judicial review of SEPA compliance before an agency has taken final action on a proposal, foreclose[s] multiple lawsuits challenging a single agency action and deny[s] the existence of `orphan' SEPA claims unrelated to any government action." Grays Harbor County, 122 Wash.2d at 251, 857 P.2d 1039.
When Lakeside applied for a use permit, the County issued a Mitigated Determination of Non-Significance (MDNS). Friends appealed the non-significance determination, requesting the County to undertake a full environmental review and issue an Environmental Impact Statement. The hearing examiner upheld the determination and granted the use permit.
Friends, along with other appellants, appealed the hearing examiner's decision to the Board. The Board reversed the hearing examiner's use permit approval. Lakeside appealed the Board's decision on day 20 of the appeals period.[4] Friends cross-appealed the non-significance determination within 21 days of Lakeside's LUPA petition, but not within 21 days of the Board's decision. The trial court denied Friends' determination challenge because the 21-day LUPA appeals period had lapsed.
Because a SEPA decision cannot be appealed without appealing the underlying land use decision, Friends argues that its first opportunity to appeal the hearing examiner's non-significance determination decision was in response to Lakeside's appeal of the Board's decision. Friends contends the legislature did not contemplate the scenario where the SEPA threshold determination favors the permit applicant, but the permit is ultimately denied on appeal. Friends also maintains the court should interpret LUPA to: (1) allow the 21-day appeal period to start running when the appeal of the permit denial is filed, or (2) allow a SEPA challenge as a counterclaim to the LUPA petition.
The court has not, however, permitted counterclaims in administrative appeals. *441 King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 138 Wash.2d 161, 180, 979 P.2d 374 (1999). In King County, the court explained:
If cross-petitions could be filed at any time, once the County filed its appeal of a particular issue decided by the [GMA] Board, all issues that had been before the Board would be subject to appeal during the litigation. Thus, no participant in the original administrative decision could consider an issue finalized.
King County, 138 Wash.2d at 180, 979 P.2d 374.
And when a statute's language is clear and unambiguous, we lack authority to construe it to reach a result not plainly stated. Stone v. Southwest Suburban Sewer Dist., 116 Wash.App. 434, 438, 65 P.3d 1230 (2003). Here, RCW 36.70C.040(3) provides that a LUPA petition is timely if it is filed and served on the appropriate parties "within twenty-one days of the issuance of the land use decision." LUPA's 21-day filing period is unambiguous.
Moreover, RCW 36.70C.040(3) did not prevent Friends from filing a timely appeal. Friends could have anticipated that Lakeside would likely appeal the Board's action. While Friends had only one day to file, it had 20 days to prepare its appeal. The substantive portion of Friends' answer to Lakeside's petition is four pages long. But the portion of the answer discussing the merits of Friends' non-significance determination argument is just over two pages. Accordingly, an even shorter document could have been prepared and filed in a day in order to comply with RCW 36.70C.040(3). And if necessary, Friends could have amended its original answer under CR 15. See RCW 36.70C.030(2) ("superior court civil rules govern procedural matters under this chapter to the extent that the rules are consistent with this chapter").

V. Jurisdiction
Washington law allows parties to commence any action against a county in the superior court of that county or in the superior court of either of the two nearest judicial districts. RCW 36.01.050. The statute addresses venue, not jurisdiction. RCW 36.01.050 (venue of actions); Shoop v. Kittitas County, 149 Wash.2d 29, 37, 65 P.3d 1194 (2003).
RCW 4.12.010(1) states that actions "[f]or the recovery of, for the possession of, for the partition of, for the foreclosure of a mortgage on, or for the determination of all questions affecting the title, or for any injuries to real property," shall be commenced in the county in which the subject of the action is situated. Friends argues that under RCW 4.12.010, the Mason County Superior Court lacked jurisdiction to hear the case. We disagree.
RCW 4.12.010 expressly refers to actions "affecting title." Black's Law Dictionary defines "title" as:
1. The union of all elements (as ownership, possession, and custody) constituting the legal right to control and dispose of property; the legal link between a person who owns property and the property itself .
2. Legal evidence of a person's ownership rights in property; an instrument (such as a deed) that constitutes such evidence.
BLACK'S LAW DICTIONARY at 1493 (7th ed.1999).
This LUPA action does not affect title. The superior court reviewed the hearing examiner's decision and the Board's reversal of that decision. Nothing in any of these decisions altered or affected legal title to the property or caused any legal injury to the property. Accordingly, RCW 4.12.010 does not apply.
Friends next argues that article IV, section 6 of the Washington Constitution grants appellate jurisdiction here only to the Thurston County Superior Court. Article IV, section 6 grants the superior courts appellate jurisdiction in cases arising in justice and other inferior courts in their respective counties as may be prescribed by law. Friends reasons that the Mason County Superior Court was acting as an appellate court in reviewing the Board's decision.
*442 The parties argue about whether this is an appellate proceeding and whether the constitutional grant of authority actually limits superior court appellate jurisdiction or whether the legislature may expand that jurisdiction. But we need not decide these issues because this is not an appeal from a justice or other inferior Mason County court. See, e.g., Chinn v. Superior Court of San Joaquin County, 156 Cal. 478, 105 P. 580, 581 (1909); Cox v. Superior Court in and for Pima County, 73 Ariz. 93, 237 P.2d 820 (1951); State ex. rel Kellogg v. Dist. Court of First Judicial Dist., 13 Mont. 370, 34 P. 298 (1893). For example, the Chinn court stated, "a board of supervisors may exercise judicial functions, [but] it is by no means an inferior court within the meaning of that term as employed in the Constitution relative to the appellate jurisdiction of the superior courts." Chinn, 105 P. at 581. Rather, "`inferior courts' has a well-recognized meaning. They are courts established for the administration of justice, charged with the exercise of judicial power as a substantive duty, but with limited jurisdiction in that regard." Chinn, 105 P. at 581.

VI. Friends' Due Process Challenge
Friends argues that it was denied due process because the hearing examiner may have had a pecuniary interest in granting the permit. Friends does not suggest that the examiner had a direct interest. Rather, Friends points to Supreme Court dicta in Lutheran Day Care v. Snohomish County, 119 Wash.2d 91, 829 P.2d 746 (1992), cert. denied, 506 U.S. 1079, 113 S.Ct. 1044, 122 L.Ed.2d 353 (1993), that "some commentators have concluded that individuals performing quasi-judicial acts" may not receive absolute quasi-judicial immunity. Lutheran Day Care, 119 Wash.2d at 109-10, 829 P.2d 746. Friends reasons that a hearing officer who reads the Lutheran Day Care dicta could recognize that he or she will be liable only for denying a permit, not for granting one. And this, according to Friends, creates at least a "small monetary interest in the outcome." Friends Br. at 33. We disagree.
The language in Lutheran Day Care is clearly dicta. The Supreme Court did not decide that hearing examiners could be liable for denying a land use permit. Nor did the court even hint as to what its position on the issue might be. We conclude the language is too speculative to create an actual monetary interest by the examiner in the outcome. In addition, to the extent the challenge suggests an appearance of fairness violation, Swift v. Island County, 87 Wash.2d 348, 361, 552 P.2d 175 (1976), Friends' argument comes too late. A party must raise an appearance of fairness objection as soon as the party knows of the problem. RCW 42.36.080; Org. to Preserve Agric. Lands v. Adams County, 128 Wash.2d 869, 887-88, 913 P.2d 793 (1996).
Lutheran Day Care was decided in 1992. If Friends believed the hearing examiner lacked an appearance of fairness, it should have raised the issue before the hearing began.

VII. Cross-AppealAsphalt Recycling
The Nisqually Area Sub-Plan states in relevant part:
The reprocessing of imported mineral resources shall not be the primary accessory use and the reprocessing of asphalt shall not be allowed due to water quality concerns. These activities shall be discontinued once reclamation of the pit is completed in accordance with the WDNR standards.
CP at 401 (Policy E.5). Relying on this specific prohibition of asphalt reprocessing, the trial court upheld the Board's decision to the extent it disallowed asphalt reprocessing.
Lakeside contends that shortly after the County adopted the above sub-area plan language, a staff study showed that in fact asphalt reprocessing would not significantly affect water quality. Still later, according to Lakeside, the County adopted a new County Mineral Extraction Code that allowed asphalt recycling with a special use permit and did not distinguish between the Nisqually Valley and other county areas. Thus, Lakeside reasons, the County effectively removed the asphalt recycling provision of the sub-area plan when it passed the later mineral *443 extraction code. We disagree for several reasons.
First, Lakeside's argument requires us to find that the County repealed the asphalt recycling provision of the sub-area plan by implication. But repeals by implication are not favored. Tollycraft Yachts Corp. v. McCoy, 122 Wash.2d 426, 439, 858 P.2d 503 (1993). More importantly, the County re-enacted the plan in 1995, several years after the County passed the new Mineral Extraction Code on which Lakeside premises its argument. And the 1995 plan contains the same asphalt recycling prohibition as the 1992 plan.
Second, the Thurston County Code expressly requires any land use decision to comply with "all applicable federal, state, regional, and Thurston County laws or plans." TCC 20.54.040(1). Although we have held that the County's specific zoning regulations control over a sub-area plan's general purpose statement, the plan is specific in prohibiting asphalt recycling. And this specific plan prohibition is not inconsistent with the specific zoning code. The two can be read together to allow asphalt manufacturing with a special use permit county-wide but allow asphalt recycling only outside the Nisqually Valley.
Affirmed.
We concur: HOUGHTON, P.J., and BRIDGEWATER, J.
NOTES
[1] A land use decision becomes issued three days after it is mailed by the local jurisdiction. RCW 36.70C.040(4)(a).
[2] Article IV, section 6 provides in relevant part: "[the superior courts] shall have such appellate jurisdiction in cases arising in justices' and other inferior courts in their respective counties as may be prescribed by law."
[3] TCC 17.09.160(k) provides:

Hearing Examiner's Decision on Appeals of Threshold Determinations for Project Actions is Final. The decision of the hearing examiner on an appeal of a threshold determination for a project action is final. The hearing examiner shall not entertain motions for reconsideration. The decision of the hearing examiner may only be appealed to Superior Court in conjunction with an appeal of the underlying action in accordance with RCW 43.21C.075, the State Environmental Policy Act and Section 17.09.160T of this section.
[4] Allowing for the three-day LUPA mailing requirement.