FILED
COURT OF APPEALS
STATE OF WASHINGTON

2015 FEB 23 AM 11: 37



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| WHATCOM COUNTY, | ) | No. 70796-5-I |
| | ) | (consolidated with Nos. |
| Petitioner, | ) | 72132-1-I and 70896-1-I) |
| | ) | |
| ERIC HIRST; LAURA LEIGH BRAKKE; | ) | DIVISION ONE |
| WENDY HARRIS; DAVID STALHEIM; | ) | |
| and FUTUREWISE, | ) | |
| | ) | |
| Cross Petitioners, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WESTERN WASHINGTON GROWTH | ) | PUBLISHED |
| MANAGEMENT HEARING BOARD, | ) | |
| | ) | FILED: February 23, 2015 |
| Respondent. | ) | |
| | ) | |

Cox, J. — Whatcom County appeals the Growth Management Hearings Board's Final Decision and Order dated June 7, 2013 (FDO). The Board determined that the Rural Element of the County's comprehensive plan and zoning code, as amended by Ordinance No. 2012-032, fails to comply with the Growth Management Act (GMA). Eric Hirst, Laura Leigh Brakke, Wendy Harris, David Stalheim, and Futurewise (collectively Hirst) cross-appeals the FDO, arguing that the Board erred by declining to declare the ordinance invalid.

We hold that the Board engaged in unlawful procedure by taking official notice of and relying on two documents without first providing the County the opportunity to contest information in these documents. We also hold that the Board erroneously interpreted and applied the law in determining that Ordinance No. 2012-032 fails to comply with the GMA. But the Board did not abuse its discretion by declining to declare the ordinance invalid. We affirm in part, reverse in part, and remand for further proceedings.

In August 2012, Whatcom County adopted Ordinance No. 2012-032.[1] By its terms, Ordinance No. 2012-032 amended the Whatcom County Comprehensive Plan and Zoning Code.[2] Among other things, this ordinance amended certain Rural Element policies and adopted by reference various pre-existing County regulations. These amendments were in response to a series of prior rulings from the Board and the courts requiring that the Rural Element of the County's comprehensive plan and development regulations be brought into compliance with the GMA.

Hirst petitioned the Board for review, challenging the adoption of Ordinance No. 2012-032. In particular, Hirst challenged the ordinance on rural land use planning, which included a challenge to the adequacy of the County's measures to protect surface and groundwater resources.

---

[1] Clerk's Papers (Case No. 70796-5) at 178-93.

[2] Id. at 178.

The Board held a hearing in April 2013. Thereafter, the Board issued its FDO. The Board concluded that the Rural Element amendments to the County's comprehensive plan and development regulations do not constitute measures to protect rural character by protecting surface and groundwater resources. Thus, according to the Board, Hirst met its burden of demonstrating that the County failed to comply with the GMA, specifically RCW 36.70A.070(5)(c).[3] But the Board denied Hirst's request for a declaration of invalidity.[4] The Board remanded the ordinance to the County to take corrective action within 180 days.[5]

Both parties appealed. The County sought review in Skagit County Superior Court, challenging the Board's determination of noncompliance with the GMA. Hirst sought review in Thurston County Superior Court, challenging the Board's decision not to declare the ordinance invalid.

Thurston County superior court transferred Hirst's appeal to Skagit County superior court, where the cases were consolidated under the Skagit County cause number.[6] The Board issued its Certificates of Appealability regarding the FDO, certifying the consolidated appeals for direct review by this court.

In April 2014, the Board held a compliance hearing. The Board concluded that "Whatcom County [was] in continuing non-compliance with the Growth

---

[3] Id. at 1559 (FDO at 44).

[4] Id. at 1565 (FDO at 50).

[5] Id.

[6] Id. at 147-149.

3

Management Act [as determined in the FDO]."[7] The Board issued a Second Order on Compliance.[8]

The County moved for discretionary review of the FDO, and we accepted the consolidated appeals for direct review. We also granted the County's request for discretionary review of the Second Order on Compliance. Based on the agreement of the parties at oral argument and our review of the records before us, we consolidate these matters.[9]

## LEGAL PRINCIPLES

In reviewing growth management hearings board decisions, courts give "'substantial weight'" to a board's interpretation of the GMA.[10] "Courts' deference to boards is superseded by the GMA's statutory requirement that boards give deference to county planning processes."[11] Accordingly, a board's ruling that

---

[7] Clerk's Papers (Case No. 72132-1) at 26 (emphasis omitted).

[8] Id. at 19-26.

[9] Pursuant to RAP 3.4, the title of this case in this court remains the same as in the superior court. See Joint Stipulation, Motion, and Order Consolidating Appeals. Clerk's Papers (Case No. 70796-5) at 147-49.

[10] Kittitas County v. E. Wash. Growth Mgmt. Hr'gs Bd., 172 Wn.2d 144, 154, 256 P.3d 1193 (2011) (internal quotation marks omitted) (quoting Lewis County v. W. Wash. Growth Mgmt. Hr'gs Bd., 157 Wn.2d 488, 498, 139 P.3d 1096 (2006)).

[11] Id.

fails to apply this "more deferential standard of review to a county's action is not entitled to deference" from the courts.[12]

Comprehensive plans and development regulations are presumed valid upon adoption.[13] "To make a finding of noncompliance with the GMA, a board must find that the county's actions are clearly erroneous, meaning the board has a 'firm and definite conviction that a mistake has been committed.'"[14] The GMA "'is not to be liberally construed.'"[15]

The Administrative Procedures Act (APA) governs judicial review of challenges to decisions by a board. Courts apply the standards of the APA, chapter 34.05 RCW, and look directly to the record before the board.[16] The party challenging the board's decision bears the burden of proving it is invalid.[17] The validity of the decision is determined under the standards of review provided in

---

[12] Quadrant Corp. v. State Growth Mgmt. Hr'gs Bd., 154 Wn.2d 224, 238, 110 P.3d 1132 (2005) (internal quotation marks omitted).

[13] RCW 36.70A.320(1); Town of Woodway v. Snohomish County, 180 Wn.2d 165, 174, 322 P.3d 1219 (2014).

[14] Kittitas County, 172 Wn.2d at 154-55 (citation omitted) (internal quotation marks omitted) (quoting Lewis County, 157 Wn.2d at 497).

[15] Id. (quoting Thurston County v. W. Wash. Growth Mgmt. Hr'gs Bd., 164 Wn.2d 329, 342, 190 P.3d 38 (2008)).

[16] Id. at 155.

[17] Thurston County v. Cooper Point Ass'n, 148 Wn.2d 1, 7, 57 P.3d 1156 (2002).

RCW 34.05.570(3), which sets forth nine subsections for granting relief from the board's decision.

A court reviews de novo alleged errors of law under RCW 34.05.570(3)(b), (c), and (d).[18] In reviewing claims under RCW 34.05.570(3)(e) that an order is not supported by substantial evidence, a court determines whether there is "'a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order.'"[19]

Here, the County primarily relies on three of these grounds for relief— RCW 34.05.570(3)(c), (d), and (e)—to argue that the Board erred when it concluded that the County's measures to protect water resources (water availability and water quality) did not comply with the GMA.

## ASSIGNMENTS OF ERROR

As an initial matter, Hirst argues that the County's failure to assign error to the Board's findings of fact in its opening brief makes them verities on appeal. We disagree.

RAP 10.3(g) requires a party to assign error to each finding of fact it contends was improperly made with reference to the finding by number. "The appellate court will only review a claimed error which is included in an

---

[18] Kittitas County, 172 Wn.2d at 155.

[19] Id. (internal quotation marks omitted) (quoting Thurston County, 164 Wn.2d at 341).

assignment of error or clearly disclosed in the associated issue pertaining thereto."[20] Unchallenged findings of fact become verities on appeal.[21]

But a "'technical violation of the rules will not ordinarily bar appellate review, where justice is to be served by such review.'"[22] The Rules of Appellate Procedure "allow appellate review of administrative decisions in spite of technical violations when a proper assignment of error is lacking but the nature of the challenge is clear and the challenged finding is set forth in the party's brief."[23]

Here, the Board did not enumerate and consolidate its findings of fact in one location. But, to the extent it made such findings, the nature and extent of the County's challenges to them are clear. Thus, this court's review is not in any way hindered by the absence of any formal assignments of error. Significantly, Hirst fails to claim any prejudice by the County's failure to assign error to any findings in its opening brief. For both of these reasons, we reject Hirst's argument and reach the merits of the County's challenges.

---

[20] RAP 10.3(g).

[21] Spokane County v. E. Wash. Growth Mgmt. Hr'gs Bd., 176 Wn. App. 555, 576, 309 P.3d 673 (2013), review denied, 179 Wn.2d 1015 (2014).

[22] State v. Olson, 126 Wn.2d 315, 322, 893 P.2d 629 (1995) (quoting Daughtry v. Jet Aeration Co., 91 Wn.2d 704, 592 P.2d 631 (1979)).

[23] Ferry County v. Growth Mgmt. Hr'gs Bd., ___ Wn. App. ___, 339 P.3d 478, 495 (2014); see also Yakima County v. E. Wash. Growth Mgmt. Hr'gs Bd., 168 Wn. App. 680, 687 n.1, 279 P.3d 434 (2012) (concluding that the court was sufficiently apprised of the challenged findings for review despite Yakima County's failure to assign error to the Growth Management Hearing Board's informal findings).

## WATER AVAILABILITY

The County argues that the Board erred when it concluded that the County's measures to protect water availability were clearly erroneous. Specifically, the County contends that the Board's conclusion is based on an erroneous interpretation of the law under RCW 34.05.570(3)(d). We agree.

Under RCW 34.05.570(3)(d), courts "'accord deference to an agency interpretation of the law where the agency has specialized expertise in dealing with such issues, but [courts] are not bound by an agency's interpretation of a statute.'"[24]

### GMA Provisions

RCW 36.70A.020 states goals to guide the development and adoption of comprehensive plans and development regulations. One of the stated goals is to "[p]rotect the environment and enhance the state's high quality of life, including air and water quality, and the availability of water."[25]

RCW 36.70A.070 sets forth mandatory elements of a comprehensive plan. It states that "[c]ounties shall include a rural element."[26] It further states that the rural element "shall include measures that apply to rural development and protect the rural character of the area, as established by the county, by . . . [p]rotecting . .

---

[24] Utter v. Dep't of Soc. & Health Servs., 140 Wn. App. 293, 300, 165 P.3d 399 (2007) (quoting City of Redmond v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd., 136 Wn.2d 38, 46, 959 P.2d 1091 (1998)).

[25] RCW 36.70A.020(10).

[26] RCW 36.70A.070(5).

. surface water and groundwater resources . . . ."[27] "'Rural character' refers to the patterns of land use and development established by a county in the rural element of its comprehensive plan" that, among other things, "are compatible with the use of the land by wildlife and for fish and wildlife habitat" and "are consistent with the protection of natural surface water flows and groundwater and surface water recharge and discharge areas."[28]

After looking to these statutes and others, the Board concluded that the GMA is "replete with requirements to protect ground and surface water and ensure land uses are compatible for fish and wildlife."[29] It also concluded that a county's comprehensive plan rural lands provision "must include measures governing rural development to protect water resources."[30]

We agree that these initial conclusions of the Board were proper interpretations of the law. The County properly concedes in its opening brief that the GMA requires it to "adopt a rural element that includes measures to protect [water availability and water quality]."[31] Accordingly, the question is whether the Board properly concluded that the ordinance fails to protect water availability and water quality as required by the GMA.

---

[27] RCW 36.70A.070(5)(c)(iv).

[28] RCW 36.70A.030(15)(d), (g).

[29] Clerk's Papers (Case No. 70796-5) at 1537 (FDO at 22).

[30] Id. at 1536 (FDO at 21).

[31] Brief of Appellant Whatcom County at 1.

In Kittitas County v. Eastern Washington Growth Management Hearings Board, the supreme court interpreted the GMA requirements for the protection of water resources, specifically water availability.[32] At issue in that case was whether the Board properly concluded that Kittitas County's subdivision regulations failed to protect water resources as required by the GMA.[33] The Board concluded that the subdivision regulations violated the water protection requirements of the GMA because they "allow[ed] multiple subdivisions side-by-side, in common ownership, which then [could] use multiple exempt wells."[34] And the Board concluded that this "fail[ed] to assure that authorized subdivisions [did] not contravene or evade water permitting requirements."[35]

In upholding the Board's decision, the supreme court rejected the argument that Kittitas County was preempted from adopting regulations related to the protection of groundwater resources.[36] Rather, it concluded that "several relevant statutes indicate that the County *must* regulate to some extent to assure that land use is not inconsistent with available water resources."[37] It first pointed to one of the same provisions we quoted earlier in this opinion to assert that the

---

[32] 172 Wn.2d 144, 175-81, 256 P.3d 1193 (2011).

[33] Id. at 175.

[34] Id. (internal quotation marks omitted).

[35] Id. at 177.

[36] Id. at 178.

[37] Id. at 178.

10

"GMA directs that the rural and land use elements of a county's plan include measures that protect groundwater resources."[38] It then pointed to other provisions, codified at RCW 19.27.097 and 58.17.110, to assert that these provisions "require counties to assure adequate potable water is available when issuing building permits and approving subdivision applications."[39] After looking to these provisions it concluded, "[T]he County is not precluded and, in fact, is required to plan for the protection of water resources in its land use planning."[40]

Accordingly, with respect to the issue in that case, the supreme court held that the Board properly interpreted the GMA's mandate to protect water "to at least require that the County's subdivision regulations conform to statutory requirements by not permitting subdivision applications that effectively evade compliance with water permitting requirements."[41] And it affirmed the Board's decision that Kittitas County's subdivision regulations failed to comply with that mandate.

Here, as the Board expressly acknowledged in the FDO, the County's subdivision regulations do not present the same problem that was at issue in Kittitas. As the Board stated, the subdivision regulations "do not allow the 'daisy-chaining' of plat applications that was the specific target of the Supreme Court's

---

[38] Id. at 178 (citing RCW 36.70A.070(1), (5)(c)(iv)).

[39] Id. at 179.

[40] Id.

[41] Id. at 181.

11

finding of noncompliance in the <u>Kittitas</u> case."[42] In fact, the County's subdivision regulations state that "[a]ll contiguous parcels of land in the same ownership *shall* be included within the boundaries of any proposed long or short subdivision of any of the properties" and that "lots so situated *shall* be considered as one parcel . . . ."[43]

Rather, at issue in this case, is the Board's decision that certain provisions of the Whatcom County Code do not comply with the GMA because they incorporate Department of Ecology rules respecting water availability and "this is not the standard to determining legal availability of water."[44] Specifically, the Board took issue with Policies 2DD-2.C.6 and 2DD-2.D.7.

Policy 2DD-2.C.6 states:

Limit water withdrawals resulting from land division through the standards in the following Whatcom County Land Division regulations, adopted herein by reference:

a. WCC 21.04.090 Water supply, Short Subdivisions
b. WCC 21.05.080 Water supply, Preliminary Long Subdivisions.[45]

---

[42] Clerk's Papers (Case No. 70796-5) at 1555 (FDO at 40).

[43] WHATCOM COUNTY CODE 21.01.040(3)(a) (emphasis added).

[44] Clerk's Papers (Case No. 70796-5) at 1556 (FDO at 41).

[45] Id. at 1554-55 (FDO at 39-40).

With respect to this policy, the Board concluded: "Policy 2DD-2.C.6 does not govern development in a way that protects surface water flows and thus fails to meet the requirements of RCW 36.70A.070(5)(c)(iv)."[46]

The Board noted similar concerns with Policy 2DD-2.D.7, which states:

> Regulate groundwater withdrawals by requiring purveyors of public water systems and private water system applicants to comply with Washington State Department of Ecology ground water requirements per WCC 24.11.050, adopted herein by reference.[47]

With respect to this policy, the Board determined that Policy 2DD-2.C.7 "fails to limit rural development to protect ground or surface waters with respect to individual permit-exempt wells as required by RCW 36.70A.070(5)(c)(iv)."[48]

In reaching these conclusions, the Board focused on the following: "The Board notes the water withdrawals allowed under Policy 2DD-2.C.6 and 2.C.7 adopt by reference three existing code sections all of which allow use of exempt wells except 'where [the Department of Ecology] has determined by rule that water for development does not exist.' However, this is not the standard to determining legal availability of water."[49]

As we read these regulations, they essentially provide that in determining the availability of water, the County seeks to meet the requirements of the GMA

---

[46] Id. at 1556 (FDO at 41).

[47] Id.

[48] Id. at 1557 (FDO at 42).

[49] Id. at 1556 (FDO at 41).

by following consistent Department of Ecology regulations regarding the availability of water. Yet, the Board concluded that the County's use of Ecology's rules as a means of meeting the requirements of the GMA fails to comply with this statute. Rather, the Board appears to conclude that the County must make its own, separate determination of the availability of water in order to fulfil the requirements of the GMA. This conclusion is an erroneous interpretation of the law.

As explained earlier, <u>Kittitas</u> established that counties are not preempted from adopting regulations for the protection of groundwater resources.[50] The supreme court squarely rejected Kittitas County's argument that only Ecology has this authority, stating that preemption prevents counties from "separately *appropriating* groundwaters."[51] The court went on to hold that counties "must regulate to some extent to assure that land use is not inconsistent with available water resources."[52]

The court was silent about what other actions counties may take in order to comply with the GMA. Thus, <u>Kittitas</u> does not expressly answer the question before this court—whether the County must make its own determination about the availability of water or whether it may meet the requirements of the GMA by invoking the assistance of Ecology by the code provisions at issue here.

---

[50] <u>Kittitas County</u>, 172 Wn.2d at 178.

[51] <u>Id.</u>

[52] <u>Id.</u> (emphasis omitted).

14

While Kittitas does not expressly answer this question, it provides helpful guidance into the proper relationship between Ecology and counties for purposes of the GMA. In rejecting Kittitas County's argument, based on RCW 90.44.040, that it was preempted from adopting regulations related to the protection of groundwater resources, the supreme court stated:

> While [RCW 90.44.040] preempts the County from separately appropriating groundwaters, it does not prevent the County from protecting public groundwaters from detrimental land uses. **Nothing in the text of chapter 90.44 RCW expressly preempts consistent local regulation.**[53]

It further explained:

> While Ecology is responsible for appropriation of groundwater by permit under RCW 90.44.050, the County is responsible for land use decisions that affect groundwater resources, including subdivision, at least to the extent required by law. In recognizing the role of counties to plan for land use *in a manner that is consistent with the laws regarding protection of water resources* and establishing a permitting process, we do not intend to minimize the role of Ecology. Ecology maintains its role, as provided by statute, and ought *to assist counties in their land use planning to adequately protect water resources.*[54]

Thus, the supreme court in Kittitas anticipated *consistent* local regulation by counties in land use planning to protect water resources. This necessarily contemplates proper cooperation between Ecology and counties regarding the protection of such resources.

---

[53] Id. (emphasis added) (emphasis omitted).

[54] Id. at 180 (emphasis added).

Here, under the County's regulations, it will only approve a subdivision or building permit application that relies on an exempt well when the well site "does not fall within the boundaries of an area where [Ecology] has determined by rule that water for development does not exist."[55] For example, relevant to this case, the County's regulations do not permit development based on a private well that is inconsistent with Ecology's rule for the Nooksack Water Resource Inventory Area (WRIA 1), the "Nooksack Rule."

By incorporating Ecology's regulations to determine availability of water for development, the County's regulations provide for cooperation between the County's exercise of its land use authority and Ecology's management of water resources. This method is consistent with the cooperative relationship contemplated by Kittitas and is consistent with the laws regarding protection of water resources under the GMA. The Board erred when it concluded otherwise.

Additionally, the Board's conclusion that the County may not rely on Ecology to assist in this determination allows for inconsistent conclusions between the County and Ecology about the availability of water. The Board's conclusion would mandate such a result in this case, where the Board's conclusions about the availability of water in WRIA 1 is contrary to Ecology's own interpretation about the availability of water in that area. We address this more fully in the next section.

---

[55] Clerk's Papers at 1555 (FDO at 40).

*Nooksack Rule*

As stated earlier, the Board determined that the County's comprehensive plan and development regulations fail to protect instream flows from impairment by groundwater withdrawals. And the Board determined that the policies fail to protect ground or surface waters with respect to individual permit-exempt wells. Contained in its analysis is the Board's determination that the County must deny a building or subdivisions permit in WRIA 1 unless the applicant can demonstrate that the proposed groundwater withdrawal in that area will not impair minimum instream flows. By concluding that the GMA mandate to protect water resources requires the County to deny such applications, the Board again erroneously interpreted the law and effectively required the County to adopt a policy inconsistent with Ecology's administrative rules.

To provide context, we turn to the supreme court's review of general water law principles in <u>Postema v. Pollution Control Hearings Board</u> and other relevant cases.[56] The doctrine of prior appropriation applies when an applicant seeks to obtain a water right in Washington.[57] "Under this doctrine, a water right may be acquired where available public water is appropriated for a beneficial use, subject to existing rights."[58] The same principles apply to groundwater.[59]

---

[56] 142 Wn.2d 68, 79, 11 P.3d 726 (2000).

[57] <u>Id.</u>

[58] <u>Id.</u>

[59] <u>Id.</u>

Ecology is responsible for appropriation of groundwater by permit under RCW 90.44.050. When a person seeks a permit to appropriate groundwater, Ecology must investigate the application pursuant to RCW 90.03.290 and "affirmatively find": "(1) that water is available, (2) for a beneficial use, and that (3) an appropriation will not impair existing rights, or (4) be detrimental to the public welfare."[60] "The groundwater code recognizes that surface waters and groundwater may be in hydraulic continuity."[61] Thus, "when Ecology determines whether to issue a permit for appropriation of public groundwater, Ecology must consider the interrelationship of the groundwater with surface waters, and must determine whether surface water rights would be impaired or affected by groundwater withdrawals."[62]

An exemption to the groundwater permitting requirement exists in RCW 90.44.050. Specifically, that statute provides an exemption for withdrawal of groundwater for domestic uses in an amount not exceeding 5,000 gallons a day.[63] Accordingly, where the exemption applies, Ecology does not engage in the usual review of a permitting application under RCW 90.03.290.[64]

---

[60] Id.

[61] Id. at 80.

[62] Id. at 80-81.

[63] Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wn.2d 1, 4, 43 P.3d 4 (2002).

[64] Id. at 16.

Ecology also has the exclusive authority to establish minimum instream flows or levels to protect fish, game, birds, other wildlife resources, and recreational and aesthetic values.[65] Under this exclusive authority, Ecology adopted a regulation dividing the state into 62 areas, commonly known as "Water Resource Inventory Areas" (WRIAs).[66] Ecology has adopted various rules governing new appropriations of water in these areas.

Here, the Board stated its view of the law as follows:

> In Postema v. Pollution Control Hearings Board, the Supreme Court made clear that where Ecology has administratively by adoption of rules closed a surface water body as in much of Whatcom County, and an applicant intends to rely on a new withdrawal from a hydraulically connected groundwater body, new water is no longer legally available for appropriation and the application must be denied. Likewise where Ecology has set minimum instream flow by rule, as in Nooksack WRIA 1, subsequent groundwater withdrawals may not contribute to the impairment of the flows.[67]

The Board then concluded that the County's regulations, which allow approval of a subdivision or building permit that relies on a private well when the proposed well site does not fall within the boundaries of an area where Ecology has determined by rule that water for development does not exist, "falls short of the Postema standard, as it does not protect instream flows from impairment by groundwater withdrawals."[68]

---

[65] RCW 90.03.247; RCW 90.22.010.

[66] WAC 173-500-040.

[67] Clerk's Papers (Case No. 70796-5) at 1555 (FDO at 40).

[68] Id.

The Board also concluded that the County's regulations allowing approval of a subdivision or building permit using an exempt well except "where [Ecology] has determined by rule that water for development does not exist" was inconsistent with the availability of water in closed basins or where instream flows were not met.[69] It stated:

> ***If Ecology has closed a stream to additional withdrawals, it is unlawful to initiate a permit-exempt groundwater withdrawal that would impact the stream. Where the proposed groundwater withdrawal is located within a basin closed to new surface water appropriations, or where Ecology has set instream flows that are not consistently met, there is a presumption that no additional water is legally available.*** Under RCW 19.27.097 or RCW 58.17.110, it is the applicant's burden to "provide evidence" that water is available for a new building or subdivision. Thus, ***according to Ecology, the County must deny a permit for a new building or subdivision unless the applicant can demonstrate factually that a proposed new withdrawal from a groundwater body hydraulically connected to an impaired surface water body will not cause further adverse impact on flows.*** The Board notes Whatcom County's regulations allow mitigations, purchase or transfer of water rights, and other appropriate strategies, but ultimately, a building permit for a private single-residential well does not require the applicant to demonstrate that groundwater withdrawal will not impair surface flows.[70]

Implicit in its analysis is the Board's determination that water is not available for permit-exempt withdrawals in WRIA 1. And it effectively concluded that the County must deny a building or subdivisions permit unless the applicant

---

[69] Id. at 1556 (FDO at 41).

[70] Id. at 1556-57 (FDO at 41-42) (emphasis added).

can demonstrate that a proposed new permit-exempt groundwater withdrawal will not impair minimum instream flows.

The Board's conclusions are erroneous for several reasons.

First, the Board erroneously interpreted and applied Postema. The Board concluded that the County's regulations fell short of the "Postema standard." But Postema addressed issues arising from Ecology's denial of "applications for groundwater appropriation permits" not permit-exempt withdrawals.[71] Thus, the County's regulations do not "fall short" of the "Postema standard," as we read that case, because Postema does not squarely address the protection of instream flows from permit-exempt groundwater withdrawals.

Second, the Board erroneously applied legal principles from one rule, the Skagit River Basin Instream Flow Rule, to the rule at issue in this case, the rule for WRIA 1 also known as the "Nooksack Rule."[72] As stated earlier in this opinion, the Board concluded that "[i]f Ecology has closed a stream to additional withdrawals, it is unlawful to initiate a permit-exempt groundwater withdrawal that would impact the stream."[73] And it concluded that "according to Ecology, the County must deny a permit for a new building or subdivision unless the applicant can demonstrate factually that a proposed new withdrawal from a groundwater

---

[71] Postema, 142 Wn.2d at 73.

[72] See ch. 173-501 WAC.

[73] Clerk's Papers at 1556-57 (FDO at 41-42).

body hydraulically connected to an impaired surface water body will not cause further adverse impact on flows."[74]

To support these conclusions, the Board relied on a December 19, 2011 letter from Ecology to the Director of Snohomish County Planning and Development Services. According to the Board, it believed that letter "explain[ed] the effect of closed basins and instream flows on rural residential development."[75] Significantly, the instream flow rule discussed in the letter was the Skagit River Basin Instream Flow Rule, WAC 173-503.[76] That is not the Nooksack Rule, which covers most of Whatcom County. Nevertheless, the Board reasoned, "While Snohomish County facts differ, the applicable legal principles are the same."[77]

But the Board's reasoning directly conflicts with Postema. That is because it is based on a uniform interpretation of instream flow rules, erroneously assuming that they regulate permit-exempt withdrawals in different regions in the same manner. In Postema, the supreme court recognized that different basin rules contain different language and expressly declined "to search for a uniform meaning to rules that simply are not the same."[78] Thus, the Board

---

[74] Id. at 1557 (FDO at 42).

[75] Id. at 1556 (FDO at 41).

[76] Clerk's Papers (Case No. 70796-5) at 616.

[77] Id. at 1556 (FDO at 41 n.154).

[78] Postema, 142 Wn.2d at 87.

22

improperly relied on this letter concerning another basin to apply its reasoning to the Nooksack Rule.

Finally, the Board erroneously interpreted the Nooksack Rule and required the County to adopt an interpretation that is inconsistent with Ecology's interpretation of the rule.

As the Board noted in the FDO, "WRIA 1 comprises most of Whatcom County."[79] The regulation is fully set forth in WAC 173-501-010 et seq. In its regulation for WRIA 1, Ecology established minimum instream flows and closed specific sub-basins to new surface water appropriations.[80]

The Board concluded that if Ecology has closed a stream to additional withdrawals, or if Ecology has set instream flows that are not consistently met, it is unlawful to initiate a permit-exempt groundwater withdrawal that would impact the stream. Accordingly, this assumes that the Nooksack Rule's closure of certain water bodies bars permit-exempt groundwater use in WRIA 1 as a matter of law. But this is contrary to Ecology's interpretation of the Nooksack Rule, which is that the Nooksack Rule does not govern permit-exempt withdrawals.

On this latter point, we base our conclusion on the Department of Ecology's amicus curiae brief in this case.[81] We do so because courts generally

---

[79] Clerk's Papers (Case No. 70796-5) at 1530 (FDO at 15 n.44).

[80] See WAC 173-501-030-040.

[81] State of Washington, Department of Ecology's Amicus Curiae Brief.

"accord deference to an agency interpretation of the law where the agency has specialized expertise in dealing with such issues."[82]

Ecology argues that "the Nooksack Rule does not mandate that water is no longer available for certain new permit-exempt groundwater uses in rural areas of Whatcom County and that land use applications relying on private wells for water supply would have to be denied in all instances."[83]

First, Ecology argues that the express language of the Nooksack Rule "only governs water uses proposed through the water right permitting system, and not permit-exempt groundwater withdrawals."[84] We agree.

Several provisions in the rule pertain only to whether water rights may be established under the permitting system. And as Ecology asserts, "This emphasis on the permitting system indicates that Ecology did not intend this Rule to govern permit-exempt groundwater use under RCW 90.44.050."[85] These provisions are as follows:

WAC 173-501-030, which establishes instream flows in WRIA 1, states in subsection (4), "Future consumptive *water right permits* issued hereafter for

---

[82] Utter, 140 Wn. App. at 300.

[83] State of Washington, Department of Ecology's Amicus Curiae Brief at 20.

[84] Id. at 14.

[85] Id. at 16.

diversion of surface water in the Nooksack WRIA and perennial tributaries shall be expressly subject to instream flows . . . ."[86]

WAC 173-501-040, which establishes closures and partial year closures of certain areas of the Nooksack River and in several creeks, states that when a project is proposed on a stream that is closed to further appropriations, "the department **shall deny the water right application** unless the project proponent can adequately demonstrate that the project does not conflict with the intent of the closure."[87]

WAC 173-501-060 relates to groundwater use. It provides:

> If department investigations determine that there is significant hydraulic continuity between surface water and the proposed groundwater source, any water right permit or certificate issued shall be subject to the same conditions as affected surface waters. If department investigations determine that withdrawal of groundwater from the source aquifers would not interfere with stream flow during the period of stream closure or with maintenance of minimum instream flows, **then applications to appropriate public groundwaters may be approved**.[88]

As Ecology correctly states, "The language in all the above sections pertains to the issuance of water right permits, and cannot be read to also apply to permit-exempt groundwater withdrawals which occur outside of the permitting system administered by Ecology."[89]

---

[86] (Emphasis added.)

[87] WAC 173-501-040(2) (emphasis added).

[88] WAC 173-501-060 (emphasis added).

[89] State of Washington, Department of Ecology's Amicus Curiae Brief at 17-18.

Additionally, WAC 173-501-070, which is titled "Exemptions," provides the following exemption:

> (2) **Single domestic**, (including up to 1/2 acre lawn and garden irrigation and associated noncommercial stockwatering) **shall be exempt from the provisions established in this chapter**, except that Whatcom Creek is closed to any further appropriation, including otherwise exempted single domestic use. For all other streams, when the cumulative impact of single domestic diversions begins to significantly affect the quantity of water available for instream uses, then any water rights issued after that time shall be issued for in-house use only, if no alternative source is available.[90]

As Ecology notes, this expressly exempts single domestic uses and there is no express language in this section limiting the exempted domestic use to groundwater.

In sum, these provisions do not, by their express terms, indicate that water is not available under the circumstances of this case. We agree with Ecology that "the Nooksack Rule, in its present form, does not govern permit-exempt groundwater use."[91]

Ecology also argues that this is clear when read in contrast to water management rules for other basins which include express language indicating that they govern permit-exempt uses of water. For example, Ecology cites WAC 173-503, the rule for the Skagit River Basin. This is the basin rule in the December 2011 letter on which the Board relied. The Skagit River Basin rule

---

[90] (Emphasis added.)

[91] State of Washington, Department of Ecology's Amicus Curiae Brief at 18.

states that "[f]uture consumptive water right permits issued hereafter for diversion of surface water in the Lower and Upper Skagit (WRIA 3 and 4) and perennial tributaries, *and withdrawal of groundwater in hydraulic continuity with surface water* in the Skagit River and perennial tributaries, *shall be expressly subject to instream flows . . . ."*[92] As this emphasized language makes clear, in contrast to the Nooksack Rule, this rule expressly indicates that it governs permit-exempt uses of water

In sum, the Board's decision effectively requires the County to reach a legal conclusion regarding water availability for permit-exempt withdrawals that is inconsistent both with Postema and with Ecology's interpretation of the Nooksack Rule. That simply is not the law.

The County also argues that the Board's "conclusion regarding the County's obligations in making water availability determinations in closed basins is not supported by substantial evidence . . . ."[93] In support of this, it argues that the Board improperly relied on the December 2011 letter from Ecology to the Director of Snohomish County Planning and Development Services. We agree. The letter addresses issues in another basin having nothing to do with the Nooksack Rule. Thus, it is not evidence of how Ecology administers the Nooksack Rule.

---

[92] WAC 173-503-040(5) (emphasis added).

[93] Brief of Appellant Whatcom County at 25.

Hirst argues that the County "may not raise the issue of a controlling 'Ecology Interpretation' for the first time on appeal."[94] But the issue of how to properly interpret the Nooksack Rule was before the Board. And the County expressly argued to the Board the legal position that Ecology confirms in its amicus brief. Thus, this argument is without merit.

Hirst argues that <u>Steensma v. Department of Ecology & Bayes Brothers LLC</u>, a case cited by the County to support its position that Ecology has interpreted the Nooksack Rule in a manner inconsistent with that advanced by the Board, does not constitute a uniform agency interpretation that is entitled to great weight.[95] But the County cited this case as an example, to illustrate that Ecology interpreted the rule this way in this one instance. It did not cite it to establish a formal Ecology interpretation of the rule.

In any event, Ecology's amicus brief in this appeal fully explains its interpretation of the Nooksack Rule. And that interpretation is fully consistent with the position that the County took below and continues to take in this appeal.

Hirst argues that even if there was "an 'Ecology interpretation' expressing a 'legal conclusion' that the [Nooksack Rule] 'was not intended to apply to permit exempt withdrawals,' as the County claims, it would not immunize the County

---

[94] Appellants' Brief & Brief of Respondents Eric Hirst, Laura Leigh Brakke, Wendy Harris and David Stalheim, and Futurewise at 20.

[95] Brief of Appellant Whatcom County at 21-23 (citing <u>Steensma v. Dep't of Ecology & Bayes Bros., LLC</u>, No. 11-053, 2011 WL 4301319 (Wash. Pollution Control Hr'gs Bd. Sept. 8, 2011)).

from its obligation to protect surface and ground water under the GMA."[96] We agree. But that argument does not come to grips with our conclusion that it is proper for the County to fulfill its requirements under the GMA by adopting regulations that are consistent with Ecology's Nooksack Rule.

Hirst argues that the Board's decision and reasoning are consistent with state water law. Hirst is mistaken.

Hirst argues that "Postema establishes that 'a minimum flow set by rule is an existing right which may not be impaired by subsequent groundwater withdrawals."[97] And he cites Swinomish Tribal Community v. Department of Ecology for the proposition that the water code "does not contain 'any provision permitting a jump to the head of the line in priority' for exempt wells."[98] Accordingly, he asserts that "Postema and Swinomish . . . support the Board's conclusion that the GMA requires the County to avoid impairment of surface waters" and that even if the County's interpretation of the Nooksack Rule was correct, "this original intent must change with changes in science and the law."[99]

As we already discussed, Postema did not address the issue of permit-exempt withdrawals. Rather, its focus was on interpretation and application of

---

[96] Brief of Respondents Eric Hirst, Laura Leigh Brakke, Wendy Harris, David Stalheim, and Futurewise at 29.

[97] Id. at 30 (emphasis omitted) (quoting Postema, 142 Wn.2d at 81)

[98] Id. at 31-32 (internal quotation marks omitted) (quoting Swinomish Indian Tribal Cmty. v. Dep't of Ecology, 178 Wn.2d 571, 598, 311 P.3d 6 (2013)).

[99] Id. at 32.

the decision criteria when reviewing applications for permits. Additionally, Swinomish is distinguishable on its facts, as it involved the Skagit Basin Rule, a rule that expressly prohibited permit exempt withdrawals.[100] In short, Hirst's reliance on these cases is not persuasive.

We conclude that the Board incorrectly interpreted and applied the relevant law in determining that the ordinance fails to comply with the GMA by failing to include measures to protect rural character by protecting surface and groundwater resources. Moreover, the letter on which it relied to interpret WRIA 1 requirements is not substantial evidence of how Ecology administers the Nooksack Rule.

## WATER QUALITY

The County next argues that the Board erred when it concluded that the County's measures to protect surface and ground water quality were clearly erroneous. Specifically, the County contends that the Board's conclusion is based on an unlawful procedure. The County also contends that the Board's conclusion is based on an erroneous interpretation and application of the law and is not supported by substantial evidence.

### Unlawful Procedure

The County argues that the Board's conclusion is based on unlawful procedure because it took official notice of two documents in a manner inconsistent with its own rules. We agree.

---

[100] Swinomish, 178 Wn.2d at 577.

RCW 34.05.570(3)(c) provides for relief from an agency order if the court determines that the agency "has engaged in unlawful procedure or decision-making process, or has failed to follow a prescribed procedure." This court reviews de novo a claim under this subsection.[101]

Additionally, RCW 34.05.570(h) provides for relief from an agency order if the court determines that the order "is inconsistent with a rule of the agency unless the agency explains the inconsistency by stating facts and reasons to demonstrate a rational basis for inconsistency."

WAC 242-03-630, which was promulgated by the Board, provides that the board or presiding officer may officially notice matters of law, including Washington state law. The "Washington state law" category includes, among other things, "decisions of administrative agencies of the state of Washington" and "codes or standards that have been adopted by an agency of this state or by a nationally recognized organization or association."[102]

Another regulation, WAC 242-03-640, provides that, "[i]n the absence of conflicting evidence, the board or presiding officer, upon request made before or during a hearing, may officially notice" certain material matters including, (a) business customs, (b) notorious facts, and (c) technical or scientific facts.[103] It further states, "Parties *shall* be notified either before or during a hearing of the

---

[101] Spokane County, 176 Wn. App. at 583.

[102] WAC 242-03-630(2).

[103] WAC 242-03-640(1).

31

material fact(s) proposed to be officially noticed, and *shall* be afforded the opportunity to contest such facts and materials."[104]

Here, as part of its analysis in the FDO of water availability and water quality problems the Board cited three documents that it termed "authoritative references."[105] The first document is the *2010 WRIA 1 State of the Watershed Report*.[106] The other two documents are documents of which the Board took official notice—the Puget Sound Partnership's *2012/2013 Action Agenda for Puget Sound*, and the Washington State Department of Fish and Wildlife's *Land Use Planning for Salmon, Steelhead and Trout*.[107] The Board described the first document as "a document adopted by a state agency" and described the second document as "a science-based land use planner's guide to salmonid habitat protection and recovery."[108] The Board cited WAC 242-03-630 as its authority to take official notice of these documents.[109]

Under WAC 242-03-630(2), the Board is authorized to take notice of, among other things, "decisions of administrative agencies of the state of Washington" or of "codes or standards that have been adopted by" a state

---

[104] WAC 242-03-640(3) (emphasis added).

[105] Clerk's Papers (Case No. 70796-5) at 1545 (FDO at 30).

[106] Id.

[107] Id. at 1524, 1546-50 (FDO at 9, 31-35).

[108] Id. at 1524 (FDO at 9).

[109] Id.

agency.[110] Neither of these two documents falls within these categories. And no other categories in this regulation appear to apply to these documents.[111] Thus, the Board improperly relied on this regulation to take official notice of these two documents.

Hirst argues that the Board had the authority to take official notice of government documents under a different regulation, WAC 242-03-640.[112] We disagree.

Under this regulation, the Board may take official notice of material facts including "specific facts which are capable of immediate and accurate demonstration by resort to accessible sources of generally accepted authority" such as "facts stated in any publication authorized or permitted by law to be made by any federal or state officer, department, or agency."[113] Any party may

---

[110] WAC 242-03-630(2) ("The board or presiding officer may officially notice . . . (2) Washington state law. The Constitution of the state of Washington; decisions of the state courts; acts, resolutions, records, journals, and committee reports of the legislature; decisions of administrative agencies of the state of Washington; executive orders and proclamations by the governor; all rules, orders, and notices filed with the code reviser; and codes or standards that have been adopted by an agency of this state or by a nationally recognized organization or association.").

[111] See WAC 242-03-630(1)-(6).

[112] Appellants' Brief & Brief of Respondents Eric Hirst, Laura Leigh Brakke, Wendy Harris and David Stalheim and Futurewise at 41-42.

[113] WAC 242-03-640(1)(b) ("In the absence of conflicting evidence, the board or presiding officer, upon request made before or during a hearing, may officially notice . . . (b) Notorious facts. Facts so generally and widely known to all well-informed persons as not to be subject to reasonable dispute or specific facts which are capable of immediate and accurate demonstration by resort to accessible sources of generally accepted authority, including, but not exclusively,

33

request that official notice be taken of a material fact, or the board or presiding officer may take official notice of a material fact on its own initiative.[114] Taking such notice is expressly conditioned on "the absence of conflicting evidence."[115]

Hirst's argument fails for several reasons.

First, there is no showing that there was an "absence of conflicting evidence" required under this subsection in order for the Board to take notice of such material facts.[116] Second, under this regulation, the parties "*shall* be notified either before or during a hearing of the material fact(s) proposed to be officially noticed, and *shall* be afforded the opportunity to contest such facts and materials."[117] This record fails to show any notice to any party either before or during the hearing that the Board intended to take notice of these documents. Finally, there is no showing that the parties were provided an opportunity to contest these materials. To the contrary, the briefing indicates the County was first aware that these two documents were the subjects of official notice by the Board in its analysis when it issued the FDO.

---

facts stated in any publication authorized or permitted by law to be made by any federal or state officer, department, or agency.").

[114] WAC 242-03-640(2).

[115] WAC 242-03-640(1).

[116] Id.

[117] WAC 242-03-640(3) (emphasis added).

Hirst argues that the notice requirement "only applies to materials 'proposed' to be officially noticed."[118] And he argues that these materials were not "proposed," but rather, the Board took notice on its own initiative. But we cannot accept the untenable proposition that the County should be deprived of the opportunity to contest these materials on the basis that the Board took official notice on its own initiative. Notice and an opportunity to be heard are, necessarily, a part of these procedures. In short, this argument is not persuasive.

For these reasons, we conclude that the Board engaged in unlawful procedure when it took official notice of these two documents without notifying the County and without affording it an opportunity to contest the materials prior to the FDO. Additionally, the Board's actions are inconsistent with its rules, and the Board did not explain the inconsistency. Accordingly, the question is what remedy is appropriate.

Hirst argues that even if the Board erred, the County was not substantially prejudiced.[119] We cannot agree.

In the FDO, the Board characterized these two documents as "authoritative references" when it discussed the factual basis for identifying water availability and water quality issues. As such, we reject the argument that the

---

[118] Appellants' Brief & Brief of Respondents Eric Hirst, Laura Leigh Brakke, Wendy Harris and David Stalheim, and Futurewise at 42.

[119] Id. at 43-44.

Board's reliance on these documents for its decision did not prejudice the County.

Hirst points out that in addition to these two documents, the Board relied on a third document to support its finding that the link between land development and water resources is well-established. Hirst contends that the third document, alone, could support this finding.

We do not quarrel with the proposition that land development can and does impact water resources. We acknowledge that the Board refers in the FDO to other evidence that was properly part of the administrative record as part of its analysis of the water quality issue. Nevertheless, we simply do not know whether the Board would have reached the same decision without the documents that it improperly considered in its analysis. It is not our function to make factual findings in this important area. Rather, it is the Board, in the first instance, who must do so. We decline to speculate on what the Board would have done on the basis of a proper record.

We conclude that the proper remedy is to reverse this portion of the FDO and remand for reconsideration by the Board on a proper administrative record.

*Erroneous Interpretation and Application of the Law*

The County also argues that the Board's conclusion on the County's measures protecting water quality is based on an erroneous interpretation and application of the law "by effectively requiring the County to correct past or

existing impacts."[120] The County argues that this conclusion is implicit based on the Board's reliance on preexisting water quality problems as evidence to find new regulations inadequate. To the extent that the Board implicitly concluded that the County has a duty to "enhance" water quality rather than "protect" it, we agree.

RCW 34.05.570(3)(d) provides that the court shall grant relief from an agency order if it determines that the agency has erroneously interpreted or applied the law. A court reviews de novo a claim brought under this subsection.[121]

Under the GMA, the County is required to include measures to protect water quality. RCW 36.70A.070(1) states, "The land use element *shall provide for protection of the quality and quantity of groundwater* used for public water supplies."[122] RCW 36.70A.070(5)(c)(iv) states, "Counties shall include a rural element," which "shall include measures that apply to rural development and protect the rural character of the area . . . by . . . [p]*rotecting . . . surface water and groundwater resources* . . . ."[123] Rural character "refers to the patterns of land use and development established by a county in the rural element of its comprehensive plan" that, among other things, "are consistent with

---

[120] Brief of Appellant Whatcom County at 47.

[121] Kittitas County, 172 Wn.2d at 155.

[122] (Emphasis added.)

[123] (Emphasis added.)

the *protection of natural surface water flows and groundwater and surface water recharge and discharge areas.*"[124]

In Swinomish Indian Tribal Community v. Western Washington Growth Management Hearings Board, the supreme court expressly considered the definition of the word "protect" as it was used in RCW 36.70A.172(1), which requires counties "to protect the functions and values of critical areas."[125] In that case, the Board had concluded that the requirement under the GMA to "protect" critical areas is met when local governments prevent new harm to critical areas.[126] The Swinomish Indian Tribal Community challenged this, arguing that where an area is already in a degraded condition, it is not being protected unless that condition is improved or enhanced.[127]

The supreme court rejected this argument. First, it looked to the dictionary definition of the word "protect" provided by the Tribe, which was "to shield from injury, danger or loss" and to protect, which "*can* result in [an object's] enhancement."[128] The supreme court stated that even under this definition, "'can' is used to describe an *option* of enhancement, rather than a *requirement*

---

[124] RCW 36.70A.030(15)(g) (emphasis added).

[125] 161 Wn.2d 415, 427-30, 166 P.3d 1198 (2007).

[126] Id. at 427.

[127] Id.

[128] Id. at 428 (alteration in original) (internal quotation marks omitted).

of enhancement, when defining 'protect.'"[129] And it concluded that this definition "illustrates that something can be protected without it being enhanced."[130]

Further, the supreme court looked to the GMA itself and noted that "[t]he legislature has also recognized that 'protect' has a different meaning than 'enhance.'"[131] It cited to several examples to support this assertion. After reviewing these statutes, the court concluded that the legislature had not imposed a duty on local governments to enhance critical areas, although it does permit it.[132] It stated, "Without firm instruction from the legislature to require enhancement of critical areas, we will not impose such a duty."[133] Thus, it concluded that the "no harm" standard protects critical areas by maintaining existing conditions.[134]

Swinomish Indian Tribal Community is instructive here. While that case involved a different provision under the GMA, there is no reason this distinction should be viewed differently in this context. A review of the relevant GMA provisions provided above shows that the legislature has not imposed a duty on the County to "enhance" the water quality as part of its efforts to protect it.

---

[129] Id.

[130] Id.

[131] Id. at 429.

[132] Id. at 429-30.

[133] Id. at 430.

[134] Id.

Rather, each of the relevant statutes requires the County to include measures to "protect" water quality. Accordingly, like in Swinomish Indian Tribal Community, without firm instruction from the legislature to require enhancement, we decline to impose a duty to enhance water quality.

In sum, to the extent that the Board concluded that the County has an obligation under the GMA to "enhance" water quality, this was an erroneous interpretation of law.

Hirst argues that "the legislature *has* imposed a duty to 'enhance' water quality."[135] In support of this, Hirst points to Swinomish Indian Tribal Community and asserts that, the supreme court, after examining RCW 36.70A.020(10), "discussed the 'duty to enhance the quality of water.'"[136]

It is true that in that case the supreme court cited and briefly discussed RCW 36.70A.020(10).[137] It stated, "RCW 36.70A.020(10)[] lists as a goal of the GMA to 'enhance the state's high quality of life, including air and water quality.'"[138] It is also true that the supreme court, in concluding that there was no duty to enhance critical areas, later stated, "*A duty to enhance the quality of*

---

[135] Appellants' Brief & Brief of Respondents Eric Hirst, Laura Leigh Brakke, Wendy Harris and David Stalheim, and Futurewise at 40.

[136] Id. (emphasis omitted) (quoting Swinomish Indian Tribal Cmty., 161 Wn.2d at 429-30).

[137] Swinomish Indian Tribal Cmty., 161 Wn.2d at 429.

[138] Id. (quoting RCW 36.70A.020(10)).

*water* is not a duty to enhance fish habitat."[139] But whether RCW

36.70A.020(10) imposes a duty to enhance the water quality was not at issue in

Swinomish Indian Tribal Community. Further, RCW 36.70A.020(10) sets forth a

*goal* of the GMA, not a requirement. Accordingly, reliance on this case and

statute as establishing a duty to enhance water quality is not persuasive.

*Substantial Evidence*

The County contends that the Board's conclusion that the County's

measures fail to protect water quality is not supported by substantial evidence.[140]

First, the County argues that the Board's conclusion is based on general

evidence of existing water quality problems, which are insufficient to prove that

the ordinance fails to comply with the GMA. Second, the County also asserts

that the Board did not adequately evaluate or consider its water quality

protections. We conclude that we need not decide either question on the basis

of the record that is currently before us. But we do express concerns the Board

should consider on remand.

With regard to the first question, we need not decide whether the County's

characterization of the Board's action is correct. But it is something the Board

should address on remand. Importantly, as we already discussed, two of the

three documents that the Board considered as "authoritative resources" were

improperly considered by the Board in its FDO.

---

[139] Id. (emphasis added).

[140] Brief of Appellant Whatcom County at 38-45.

As for the second question, we view that as a question whether the Board has adhered to the standard set in the GMA that "boards give deference to county planning processes."[141] As the law provides, a board's ruling that fails to apply this "'more deferential standard of review' to a county's action is not entitled to deference" from the courts.[142]

Beyond these two observations, we need not address the question of water quality any further.

## REQUEST FOR FINDING OF INVALIDITY

In his cross-appeal, Hirst contends that the Board erred when it denied his request for a finding of invalidity. Specifically, Hirst argues that the Board erroneously interpreted and applied the GMA because it applied an incorrect legal standard. We hold that the Board did not abuse its discretion in declining to make a determination of invalidity.

"If the growth board finds that the plan or regulation is flawed, it has two options: (1) it may enter a finding of noncompliance or (2) it *may* enter a finding of invalidity."[143] If the growth board finds noncompliance, it remands the matter to the county with instructions to comply within a certain time, and the county plans and regulations remain valid during the remand period.[144] "If the flaw in the

---

[141] Kittitas County, 172 Wn.2d at 154.

[142] Quadrant Corp., 154 Wn.2d at 238.

[143] Town of Woodway, 180 Wn.2d at 174 (emphasis added).

[144] Id.

plan or regulation represents a major violation of the GMA, the growth board *has the option* of determining that the plan or regulation is invalid."[145] "'Upon a finding of invalidity, the underlying provision would be rendered void.'"[146]

RCW 36.70A.302(1) sets out the legal standards to apply in deciding whether to make a determination of invalidity. It provides:

> (1) The Board *may* determine that part or all of a comprehensive plan or development regulations are invalid if the board:
>
> (a) Makes a finding of noncompliance and issues an order of remand under RCW 36.70A.300;
>
> (b) Includes in the final order a determination, supported by findings of fact and conclusions of law, that the continued validity of part or parts of the plan or regulation would substantially interfere with the fulfillment of the goals of this chapter; and
>
> (c) Specifies in the final order the particular part or parts of the plan or regulation that are determined to be invalid, and the reasons for their invalidity.[147]

Here, the Board denied Hirst's request for a finding of invalidity. It did so after determining that the ordinance failed to comply with the GMA.

As the use of the word "may" necessarily implies, this decision is a matter of discretion.[148] Thus, the question is whether the Board abused its discretion.

In the final order, it stated:

---

[145] Id. at 175 (emphasis added).

[146] Id. (quoting King County v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd., 138 Wn.2d 161, 181, 979 P.2d 374 (1999)).

[147] RCW 36.70A.302(1) (emphasis added).

[148] See Strenge v. Clarke, 89 Wn.2d 23, 28, 569 P.2d 60 (1977).

This Board has previously held that it will declare invalid only the most egregious noncompliant provisions which threaten the local government's future ability to achieve compliance with the Act. Although the Board finds areas of noncompliance with the GMA, [Hirst] ha[s] not met the standard for a declaration of invalidity.[149]

As case law and the relevant statute indicate, the Board's decision to make a finding of invalidity is discretionary. As the supreme court stated, "If the growth board finds that the plan or regulation is flawed, it has two *options* . . . ."[150] And as the GMA states, "The board *may* determine that part or all of a comprehensive plan or development regulations are invalid . . . ."[151] Here, the Board's statements merely reflect its view that this not a proper case to find invalidity, not that Hirst failed to satisfy the statutory requirements for invalidity. This is a proper exercise of discretion.

Hirst argues, "The standard for a determination of invalidity is not 'the most egregious noncompliant provisions which threaten the local government's future ability to achieve compliance with the Act.'"[152] And Hirst points out that RCW 36.70A.302 nowhere requires a finding that noncompliant provisions are "the most egregious" or that they threaten the local government's "future ability"

---

[149] Clerk's Papers (Case No. 70796-5) at 1565 (FDO at 50) (footnote omitted).

[150] Town of Woodway, 180 Wn.2d at 174 (emphasis added).

[151] RCW 36.70A.302(1) (emphasis added).

[152] Appellants' Brief & Brief of Respondents Eric Hirst, Laura Leigh Brakke, Wendy Harris and David Stalheim, and Futurewise at 45-46 (quoting Clerk's Papers (Case No. 70796-5) at 1565 (FDO at 50)).

to comply with the GMA. But with these statements, the Board was not attempting to state the applicable test for invalidity under the statute. Rather, it appears to be stating its own specific standard of when it chooses to exercise its statutory authority to make an invalidity determination. This is seen by the opening sentence, which states, "*This* Board has previously held it will declare invalid only the most egregious noncompliant provisions which threaten the local government's future ability to achieve compliance with the Act."[153] This is consistent with the GMA, which as stated above, grants the Board discretion.

Hirst also argues that the Board's denial of the invalidity request is not supported by substantial evidence.[154] Hirst argues that the record before the Board shows that all of the requirements for invalidity are met, and he points to different documents and evidence in the record to support the assertion that continued validity of the ordinance will "substantially interfere with the goals of the GMA."[155] But given that this is a discretionary decision by the Board, this argument is not relevant.

Hirst cites Spokane County v. Eastern Washington Growth Management Hearings Board, where Division Three upheld a Board's determination of invalidity, stating that the Board had "correctly interpreted and applied the law

---

[153] Clerk's Papers (Case No. 70796-5) at 1565 (FDO at 50) (emphasis added).

[154] Appellants' Brief & Brief of Respondents Eric Hirst, Laura Leigh Brakke, Wendy Harris and David Stalheim, and Futurewise at 44-50.

[155] Id. at 47 (internal quotation marks omitted).

upon thorough reasoning with due consideration for the facts."[156]  Hirst contrasts

Spokane County, arguing that in this case, the Board summarily dismissed

his invalidity argument.  But because that case involved a determination of

invalidity, rather than a Board's decision not to find invalidity, it is distinguishable

and not helpful.

## SECOND ORDER ON COMPLIANCE

The County also asks this court to reverse the Second Order on

Compliance.  That order followed issuance of the FDO and a subsequent hearing

on whether the County had corrected the problems to bring the County into

compliance with the GMA.  The County argues that the Board erred when it

concluded that the County's measures to protect surface and groundwater

availability, including the measures incorporated by the 2014 Ordinance, were

clearly erroneous.[157]  We agree.

As an initial matter, Hirst argues that the County is barred from raising and

arguing the issues it raises in this case "because it did not argue them before the

board, as RCW 34.05.554 requires."[158]  But because "[t]he various stages of this

litigation are part of a single proceeding," we reject this argument.[159]

---

[156] 176 Wn. App. 555, 578, 309 P.3d 673 (2013), review denied, 179 Wn.2d 1015 (2014).

[157] Opening Brief of Whatcom County (Case No. 72132-1) at 3.

[158] Respondents' Brief of Eric Hirst, Laura Leigh Brakke, Wendy Harris, David Stalheim, and Futurewise (Case No. 72132-1) at 11.

[159] Clallum County v. W. Wash. Growth Mgmt. Hr'gs Bd., 130 Wn. App. 127, 131-33, 121 P.3d 764 (2005).

This issue is controlled by the prior parts of this opinion. We held that the FDO should be reversed and the matter remanded to the Board for reconsideration on a proper record. Thus, we also reverse the second order.

We affirm the FDO on its invalidity determination and reverse on its determinations regarding water availability and water quality. We also reverse the Second Order on Compliance. We remand to the Board for reconsideration on a proper record.

Cox, J.

WE CONCUR:

Trickey, J

Schindler, J